**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**SLOAN BEATRIS ARIAS**                                                    **PLAINTIFF**

**V.**                                   **CASE NO: 5:22-CV-05248**

**MERRICK GARLAND in his Official Capacity,**
**Attorney General; ALEJANDRO MAYORKAS,**
**in his Official Capacity, Secretary, U.S.**
**Department of Homeland Security; ANTONY**
**BLINKEN, in his Official Capacity, Secretary,**
**U.S. Department of State; MICHAEL GARCIA,**
**in his Official Capacity, Consul General at the**
**U.S. Embassy in San Salvador; JANE DOE, in**
**her Official Capacity, Consular Officer at the**
**U.S. Embassy in San Salvador**                                         **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the Court is a Motion to Dismiss (Doc. 19) filed by Defendants Attorney General Merrick Garland, Secretary of Homeland Security Alejandro Mayorkas, Secretary of State Antony Blinken, Consul General of the U.S. Embassy in San Salvador, El Salvador Michael Garcia, and consular officer Jane Doe (collectively, "Defendants" or "the Government"). The Court has reviewed the briefing[1] and heard oral argument on July 6, 2023.

Plaintiff Sloane Arias challenges the denial of her husband's visa by a consular officer at the U.S. Embassy in San Salvador. She claims the denial violated her due process rights and the Administrative Procedure Act ("APA"). Her husband, Otto

---

[1] The Court has considered Defendants' Brief in Support of its Motion (Doc. 19-1), Ms. Arias's Response in Opposition (Doc. 21) and Supplement (Doc. 26), and the Amended Complaint and all attachments (Doc. 15).

Sandoval, has "no constitutional right of entry to this country as a nonimmigrant or otherwise," and therefore cannot sue on his own behalf. *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

The Government's Motion to Dismiss rests on the doctrine of consular nonreviewability, which generally precludes "[j]udicial review of visa denials by consular officials at United States Embassies." *Baan Rao Thai Rest. v. Pompeo*, 2019 WL 3413415, at *2 (D.D.C. July 29, 2019), *aff'd*, 985 F.3d 1020 (D.C. Cir. 2021) (citing *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1159–60 (D.C. Cir. 1999)). "The doctrine of consular nonreviewability is a rule of decision, formulated by courts and informed by judicial respect for the separation of powers, that curtails judicial review of procedural due process challenges to visa denials in light of the political branches' broad power over the creation and administration of the immigration system." *Munoz v. United States Dep't of State*, 50 F.4th 906, 920–21 (9th Cir. 2022) (cleaned up).

However, Ms. Arias seeks to invoke a limited exception to the doctrine of consular nonreviewability. While courts generally cannot review the Government's reason for denying a visa, the Supreme Court held in *Mandel* that, when a U.S. citizen's constitutional rights are implicated by a visa denial, the Government must provide a "facially legitimate and bona fide" reason for the denial. 408 U.S. at 769. If it does, then the doctrine of consular nonreviewability nevertheless applies and the case cannot proceed. If it fails to provide such a reason, however, the Court may "look behind" the decision. *Id.* at 770.

Because the Court finds the Government has not satisfied its obligation under *Mandel* to provide a facially legitimate and bona bide reason for denying Mr. Sandoval's

2

visa, Ms. Arias's due process claim can proceed. Because the *Mandel* exception to the doctrine of consular nonreviewability does not apply to statutory claims, Ms. Arias's APA claim must be dismissed. Accordingly, the Motion is **GRANTED IN PART AND DENIED IN PART**.

## I.   BACKGROUND

According to the Amended Complaint (Doc. 15), a U.S. consular officer in San Salvador, El Salvador, denied an immigrant visa to Otto Orlando Sandoval Gonzalez based on the officer's suspicions that Mr. Sandoval is a member of a criminal organization. His wife, Sloane Beatris Arias, brought this suit seeking "injunctive relief to compel the Department of Homeland Security and/or the Department of State to rescind or remove the finding of inadmissibility." *Id.* at ¶ 14.

Mr. Sandoval entered the U.S. more than a decade ago "without inspection," making him ineligible for permanent resident status. *Id.* at ¶ 3.  In 2017, he and Ms. Arias married in Rogers, Arkansas, and that same year, Ms. Arias filed a Form I-130 Petition for Alien Relative with the U.S. Citizenship and Immigration Services ("USCIS"). USCIS approved the Form I-130. However, because Mr. Sandoval was not lawfully in the United States, he would have to return his country of origin, El Salvador, to apply for an immigrant visa. In addition, Mr. Sandoval had to file a Form I-601A to seek a provisional waiver of inadmissibility, which USCIS granted in October 2020.

On July 21, 2021, Mr. Sandoval attended his first immigrant visa interview at the Consular Section of the U.S. Embassy in San Salvador. On September 1, 2021, he attended a second interview. Ms. Arias alleges that during that second interview, "Mr. Sandoval was interrogated and accused of having a gang affiliation. He denied having

any such affiliation. Despite Mr. Sandoval's vehement denial of any gang ties, the consular officer told Mr. Sandoval that she would grant him asylum in the United States if he would provide the names of gang members known to him." *Id.* at ¶ 5.

On October 12, 2021, the Immigrant Visa Unit of the Consular Section informed Mr. Sandoval that his immigrant visa had been denied. The Immigrant Visa Unit's letter stated:

> Your visa has been refused pursuant to Section 212(a)(3)(A)(ii) of the Immigration and Nationality Act, due to the consular officer's factual finding that there is reason to believe that you are a member of a known criminal organization consistent with the Department of State's Foreign Affairs Manual (FAM), at 9 FAM 302.5-4(B)(2).
>
> This factual finding was reached following a thorough investigation by consular staff. The Department of State's Visa Office in Washington reviewed our findings and concurred with our determination that the applicant is ineligible under Section 212(a)(3)(A)(ii). There is no waiver available for this ineligibility under U.S. law and regulation. Therefore we cannot continue to process the visa case and you are ineligible to immigrate to the United States.

(Doc. 15-3).

The provision of the Immigration and Nationality Act ("INA") cited in the Immigrant Visa Unit's letter is codified at 8 U.S.C. § 1182(a)(3)(A)(ii). Section 1182 lists numerous grounds for finding an alien inadmissible and therefore "ineligible to receive visas and ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). Section 1182(a)(3)(A)(ii), which falls under the "In general" subsection of "Security and related grounds" for inadmissibility, states, "Any alien who a consular officer or the Attorney General knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity . . . is inadmissible."

Section 9 FAM 302.5-4(B)(2) of the Department of State's Foreign Affairs Manual contains a list of criminal organizations that would trigger a rejection under § 1182(a)(3)(A)(ii), including the Mafia, the Yakuza, and "any of the organized Salvadoran, Honduran, Guatemalan, and Mexican street gangs in Central and North America." The Manual requires the applicant be an "active member" of the criminal organization to trigger denial under § 1182(a)(3)(A)(ii).

On January 12, 2022, Ms. Arias, through counsel, contacted the Immigrant Visa Unit "requesting the factual basis of the visa refusal." (Doc. 15-4). Counsel wrote, in part:

> The officer alleged that there were photographs or Mr. Sandoval Gonzalez with gang members but refused to show Mr. Sandoval Gonzalez the alleged photographs. During his interview, Mr. Sandoval Gonzalez acknowledged that he knows of people who have been associated with gangs. He also stated that he has been at parties with individuals he later learned were associated with gangs. However, prior intermittent interactions with individuals who may have been gang members is not sufficient to support a finding that Mr. Sandoval Gonzalez himself is a current, active gang member.

*Id.* at p. 1. On June 28, 2022, the Immigrant Visa Unit responded with a reiteration of its previous letter: Mr. Sandoval's visa was denied "due to the consular officer's factual finding that there is reason to believe that [he is] a member of a known criminal organization." (Doc. 15-6).

Ms. Arias attacks the consular officer's visa denial on two separate grounds. First, she alleges that, by not providing a factual basis for their visa denial decision, "[D]efendants' decision violates the Administrative Procedure Act and constitutes agency action that is arbitrary, capricious, and contrary to law." (Doc. 15, ¶ 34). She points to 5 U.S.C. § 706(2)(A), a provision of the APA that allows a "reviewing court" to "hold unlawful

and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

Second, Ms. Arias alleges that Defendants' visa denial decision violated her due process rights under the Fifth Amendment to the Constitution "by depriving her of her liberty interest in reunification with her husband." (Doc. 15, ¶ 36). Her due process claim rests on three separate bases, each of which she alleges would justify recission of the visa denial decision. She primarily argues that, under *Mandel*, because "[t]here is no fact in the record to support the finding," the visa denial "is not facially legitimate and bona fide." *Id.* She further alleges that even if Defendants were to proffer a sufficient factual basis for their decision at this point, their decision would be untimely and her due process rights would nevertheless be violated. Finally, she alleges that even if Defendants' decision was facially legitimate, bona fide, and timely, the decision is not shielded by the doctrine of consular nonreviewability because "the consular officer acted in bad faith by denying the visa application after promising to grant Mr. Sandoval asylum if he identified gang members – a benefit that the officer has no legal authority to grant." *Id.*

Defendants move to dismiss the Amended Complaint under the doctrine of consular nonreviewability. They argue (1) the *Mandel* exception does not apply because Ms. Arias has no constitutional right to live with her husband in the United States, (2) even if *Mandel* applies, the consular officer's visa denial satisfied *Mandel*'s standard, (3) Ms. Arias has not shown that the consular officer acted in bad faith, and (4) the doctrine of consular nonreviewability also bars Ms. Arias's APA claim. In the alternative, Defendants argue that Defendants Garland, Mayorkas, and Blinken must be dismissed as improper defendants.

## II.  LEGAL STANDARD

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim that [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## III. DISCUSSION

### A.  Due Process Claim

The viability of Ms. Arias's due process claim depends on whether *Mandel*'s exception to the doctrine of consular nonreviewability applies in this case. *Mandel* allows the Court to "look behind" a visa denial if (1) the visa denial implicates the plaintiff's constitutionally protected interests and (2) the visa denial lacked a facially legitimate and bona fide factual basis. *See* 408 U.S. at 762–70. Because Ms. Arias's constitutional rights were implicated by her husband's visa denial and Defendants have not met their burden at this stage of the proceedings to show the denial was based on a facially legitimate and

bona fide factual basis, the Court finds Ms. Arias has stated a claim for denial of her due process rights.

In *Mandel*, Ernest Mandel, a Belgian journalist, applied for a visa to enter the U.S. to attend several academic conferences. The consular officer in Brussels denied Mandel's application, citing § 212(a)(28) of the INA, which makes ineligible for a visa anyone who advocates for communism. *Id.* at 758–59. The Attorney General had the statutory authority to waive that provision but explained in a letter to Mandel that a waiver was denied because Mandel's activities during a prior trip to the U.S. "went far beyond the stated purposes of his trip, on the basis of which his admission had been authorized and represented a flagrant abuse of the opportunities afforded him to express his views in this country." *Id.* at 759. Mandel brought suit seeking to reverse the denial of his visa. *Id.* at 760. Though Mandel had no constitutional right to enter the U.S., several American citizens joined Mandel's suit and argued that Mandel's exclusion burdened their ability "to hear, speak, and debate with Mandel in person." *Id.* at 762. The Court found the American citizens' First Amendment rights to receive information were "implicated" by the Government denying Mandel a visa. *Id.* at 765.

Nevertheless, the Supreme Court upheld the Government's denial of Mandel's visa. *Id.* at 770. The Court explained that Congress validly delegated its "plenary power . . . to make policies and rules for exclusion of aliens" to the executive branch, and when the executive branch "exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."  *Id.* at 769–70. In Mandel's case, the

Court held that "the Attorney General did inform Mandel's counsel of the reason for refusing him a waiver. And that reason was facially legitimate and bona fide." *Id.* at 769.

The Supreme Court next interpreted *Mandel*'s exception to consular nonreviewability in *Kerry v. Din*, 576 U.S. 86 (2015). There, the Court took up the question at the center of this case: whether a United States citizen has a constitutional right to live in the U.S. with her spouse. However, the splintered Court failed to offer clear guidance on the question.

Fauzia Din was a U.S. citizen and resident. The Government denied Din's husband, an Afghan citizen and resident, an immigrant visa based on 8 U.S.C. § 1182(a)(3)(B), which makes inadmissible applicants involved in terrorism. Din sued, "claim[ing] that the Government denied her due process of law when, without adequate explanation of the reason for the visa denial, it deprived her of her constitutional right to live in the United States with her spouse." *Id.* at 88 (plurality). The Ninth Circuit held that Din had a protected liberty interest in her marriage and the Government's explanation for the visa denial was inadequate.

Justice Scalia, writing for a plurality that included Chief Justice Roberts and Justice Thomas, reversed the Ninth Circuit and found "[t]here is no such constitutional right." *Id.* Justice Kennedy, joined by Justice Alito, concurred in the judgment but did not join the plurality's reasoning. Instead, Justice Kennedy wrote that "rather than deciding, as the plurality does, whether Din has a protected liberty interest, my view is that, even assuming she does, the notice she received regarding her husband's visa denial satisfied due process." *Id.* at 102 (Kennedy, J., concurring in the judgment). Because his reasoning was narrower than the plurality's, Justice Kennedy's concurrence is the controlling opinion

9

in *Din*. *See Cardenas v. United States*, 826 F.3d 1164, 1167 (9th Cir. 2016) (holding that, under *Marks v. United States*, 430 U.S. 188 (1977), "Justice Kennedy's concurrence in *Din* is the controlling opinion").

Justice Kennedy concluded that the case presented a straightforward application of *Mandel* because "the Government satisfied any obligation it might have had to provide Din with a facially legitimate and bona fide reason for its action when it provided notice that her husband was denied admission to the country under § 1182(a)(3)(B)." *Din*, 576 U.S. at 106 (Kennedy, J., concurring in the judgment). By pointing to a specific statutory section that made Din's husband inadmissible, the decision was "facially legitimate," and—although no reasoned explanation like the Attorney General gave in *Mandel* was provided—the decision rested "upon a bona fide factual basis" because "unlike the waiver provision at issue in *Mandel*, which granted the Attorney General nearly unbridled discretion, § 1182(a)(3)(B) specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Id.* at 105. Finally, Justice Kennedy found that a court could "look behind" a visa denial even if the Government provided a facially legitimate and bona fide reason for the denial if the plaintiff makes a showing that the consular officer denied the visa in bad faith. *Id.* However, Din failed to make such a showing. *Id.*

Justice Breyer dissented, joined by Justices Ginsburg, Sotomayor, and Kagan. The dissent would have affirmed the Ninth Circuit's decision because Din has a liberty interest in "her freedom to live together with her husband in the United States" and "the Constitution requires the Government to provide an adequate reason why it refused to grant Ms. Din's husband a visa." *Id.* at 107, 112 (Breyer, J., dissenting).

The Ninth and D.C. Circuits have both recently applied the doctrine of consular nonreviewability to the statutory basis for inadmissibility at issue in this case—8 U.S.C. § 1182(a)(3)(A)(ii)—and have come to opposite conclusions. With no Eighth Circuit precedent in this area, the Court has closely examined *Muñoz v. United States Dep't of State*, 50 F.4th 906 (9th Cir. 2022), *rehearing en banc denied*, 2023 WL 4537034 (July 14, 2023), and *Colindres v. United States Dep't of State*, 2023 WL 4140277 (D.C. Cir. June 23, 2023).

The decisions are split on two questions relevant here. The first is whether a U.S. citizen has a constitutionally protected liberty interest in living in the U.S. with her spouse. The second is how much reasoning the Government must provide when denying a visa under § 1182(a)(3)(A)(ii) to satisfy *Mandel*'s requirement that the denial be facially legitimate and bona fide. The Court addresses each of these questions below.

### 1. Constitutional Interest

The Government argues that "Mr. Sandoval's visa refusal does not violate Plaintiff's constitutional rights" because she "has no constitutionally protected right to be reunited with her spouse in the United States." (Doc. 19-1, pp. 22–23). In support of this position, the Government cites to the plurality opinion in *Din*, along with circuit and district court opinions from around the country. *Colindres* was issued after the Government filed its brief.

Having considered the split of persuasive authority on this issue, the Court finds that a U.S. citizen's liberty interests are implicated when the Government denies a visa to the citizen's spouse. Rather than creating a new substantive due process right, this finding merely recognizes that a U.S. citizen's existing constitutional rights to marriage

and to live in the U.S. are burdened when the citizen's spouse is denied entry into the country.

In *Din*, six justices either assumed or found that this liberty interest exists. Justice Breyer, dissenting for four justices, reasoned that, "[a]s this Court has long recognized, the institution of marriage, which encompasses the right of spouses to live together and to raise a family, is central to human life, requires and enjoys community support, and plays a central role in most individuals' 'orderly pursuit of happiness.'" *Din*, 576 U.S. at 108 (Breyer, J., dissenting) (quoting *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923)). "Similarly, the Court has long recognized that a citizen's right to live within this country, being fundamental, enjoys basic procedural due process protection." *Id.*

Days after *Din* was decided, *Obergefell v. Hodges* strengthened the Constitution's protection of marriage and made clear that "[t]he right to marry is fundamental as a matter of history and tradition." 576 U.S. 644, 671 (2015). The Court explained that the "right to marry, establish a home, and bring up children" make up "a unified whole" that is protected by the Fourteenth Amendment. *Id.* at 668 (cleaned up).

The Court also finds persuasive the Ninth Circuit's analysis in *Muñoz*. There, the Ninth Circuit reaffirmed its prior holding "that a U.S. citizen possesses a liberty interest in a non-citizen spouse's visa application." *Muñoz*, 50 F.4th at 916. The court reasoned that because the Supreme Court has held that U.S. citizens have fundamental liberty interests both in their marriage and in "residing in their country of citizenship," "the cumulative effect of such a [non-citizen spouse's visa] denial is a direct restraint on the citizen's liberty interests protected under the Due Process Clause because it conditions enjoyment of

one fundamental right (marriage) on the sacrifice of another (residing in one's country of citizenship)." 50 F.4th at 916 (citation omitted).

To be sure, the three-justice plurality in *Din* had a different view. The plurality called it "absurd" to claim the denial of a visa to Din's husband deprived Din of life, liberty, or property such that the Fifth Amendment's due process protections could be invoked. *Din*, 576 U.S. at 92 (plurality). It further wrote that the Court's precedents do not "establish[] a free-floating and categorical liberty interest in marriage . . . sufficient to trigger constitutional protection whenever a regulation in any way touches upon an aspect of the marital relationship." *Id.* at 95. The plurality also pointed to the nation's "long practice of regulating spousal immigration." *Id.*

In *Colindres*, the D.C. Circuit adopted the *Din* plurality's view. The court explained that "history and practice cut against Mrs. Colindres's claim that she has a 'marital right' to live in America with her husband" because "from early federal immigration legislation to today, Congress has sometimes limited spousal immigration." *Colindres*, 2023 WL 4140277, at *4–5. The Sixth Circuit has also adopted the *Din* plurality's view. *See Baaghil v. Miller*, 1 F.4th 427, 433 (6th Cir. 2021) (holding that a visa denial did not implicate a permanent resident's constitutional rights because "[n]othing in the Constitution creates a right to bring a noncitizen spouse into the United States").

The *Din* plurality and the *Colindres* and *Baaghil* courts applied the circumscribed approach to recognition of new substantive due process rights described in *Washington v. Glucksberg*, 521 U.S. 702 (1997). *Glucksberg* instructs that rights are only protected by the Fourteenth Amendment if they are "deeply rooted in our history and traditions" or "fundamental to our concept of constitutionally ordered liberty." *Id.* at 727.

13

The Court is not persuaded. *Obergefell* made clear that *Glucksberg*'s focus on "specific historical practices . . . is inconsistent with the approach this Court has used in discussing other fundamental rights, including marriage and intimacy." 576 U.S. at 671. Many jurisdictions in this country had "sometimes limited" interracial marriage before *Loving v. Virginia*, 388 U.S. 1 (1967), and "sometimes limited" same-sex marriage before *Obergefell*. And in any event, Ms. Arias does not ask the Court to recognize a *new* substantive due process right but instead to recognize that her existing rights are burdened if she cannot live with her husband.

The Government's position also cannot be reconciled with the Supreme Court's reasoning in *Mandel*. The Government asks the Court to find Ms. Arias has the right to be married to Mr. Sandoval and to reside in this country but that those rights have nothing to do with whether her husband may physically enter the U.S.  Under the Government's view, Ms. Arias's rights are not implicated because she could leave the U.S. to live with Mr. Sandoval or communicate with him remotely. In *Mandel*, the plaintiffs' First Amendment rights to receive information was sufficient to trigger constitutional scrutiny of Mandel's visa denial. *See* 408 U.S. at 765. It was immaterial to the Court that the plaintiffs could have traveled to Belgium or called or written Mandel to receive the same information. Their rights were implicated because they were U.S. citizens and wanted to engage in constitutionally protected activities in the U.S. That is no different from Ms. Arias. *See Colindres*, 2023 WL 4140277, at *7 (Srinivasan, C.J., concurring in the judgment) (expressing skepticism in the majority's conclusion "that an American citizen has no cognizable right-to-marriage interest in her husband's physical presence in the country to enable sustained, face-to-face interaction with her husband"). Ms. Arias has a

right to "marriage and intimacy," *Obergefell*, 576 U.S. at 671, and she wants to exercise that right in the U.S.[2]

## 2.  Facially Legitimate and Bona Fide

While the Court has found that Mr. Arias's liberty interests were implicated by the Government's visa denial, the doctrine of consular nonreviewability will nevertheless apply to shield the Government's decision if the consular officer gave a "facially legitimate and bona fide" reason for the denial. *See Mandel*, 408 U.S. at 769. Under Justice Kennedy's concurrence in *Din*, this inquiry proceeds in two steps: "First, [the Court] examine[s] whether the consular officer denied the visa under a valid statute of inadmissibility. Second, [it] consider[s] whether, in denying the visa, the consular officer cited an admissibility statute that specifies discrete factual predicates the consular officer must find to exist before denying a visa or whether, alternatively, there is a fact in the record that provides at least a facial connection to the statutory ground of inadmissibility." *Khachatryan v. Blinken*, 4 F.4th 841, 851 (9th Cir. 2021) (cleaned up). The purpose of the "facially legitimate and bona fide" requirement is to give the plaintiff "the ability to vindicate her liberty interest, whether through the presentation of additional evidence or initiation of a new petition." *Muñoz*, 50 F.4th at 922.

---

[2] Because the Court finds Ms. Arias's liberty interests were burdened when the Government denied her husband a visa, it does not analyze her alternative argument that her "fundamental rights are implicated by her husband's visa denial . . . because Defendants have already acknowledged, by granting Mr. Sandoval's unlawful presence waiver (Form I-601A), that his absence from the United States is causing 'extreme hardship' to Ms. Arias, and that she would likewise suffer extreme hardship if she was forced to move to El Salvador." (Doc. 21, p. 9).

To be facially legitimate, the Government's refusal to grant a visa must cite to a valid statutory ground. *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). Here, there is no dispute that 8 U.S.C. § 1182(a)(3)(A)(ii) is a valid statutory ground to refuse a visa. Therefore, the consular officer's reason for denying Mr. Sandoval's visa was facially legitimate; the question is whether the consular officer communicated to Mr. Sandoval and Ms. Arias a bona fide factual basis for the denial.

To be bona fide, the consular officer's visa denial decision must provide to the applicant a sufficient factual basis, which *may* be satisfied by citation to a statutory provision which "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). In other words, if the consular officer cites to a statutory section that includes discrete factual predicates, it can be presumed that the consular officer made the specific factual findings required by that section before denying the visa. If the statute does not specify discrete factual predicates, the consular officer must provide additional explanation for her decision. *See id.*

The Government argues that, here, the consular officer's citation to § 1182(a)(3)(A)(ii) was sufficient. *See* Doc. 19-1, p. 19. Ms. Arias argues that § 1182(a)(3)(A)(ii) lacks discrete factual predicates and the statutory citation alone cannot provide a bona fide factual basis for a visa denial.

In *Muñoz,* the Ninth Circuit held that, unlike the provision in *Din*, a consular officer's citation to § 1182(a)(3)(A)(ii) is not a facially legitimate and bona fide reason on its own to deny a visa because the statute lacks discrete factual predicates. 50 F.4th at 917. In *Colindres*, the D.C. Circuit held that § 1182(a)(3)(A)(ii) does specify a sufficient factual

16

predicate because it requires the consular officer to find that the immigrant intends to engage in unlawful activity in the United States. 2023 WL 4140277, at *6.

The Court finds § 1182(a)(3)(A)(ii) lacks discrete factual predicates. It permits a visa denial upon the consular officer's finding that there is "reasonable ground to believe" that an alien "seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity." This section is far more general than the provision that Justice Kennedy found to contain discrete factual predicates in *Din*. There, the relevant section, 8 U.S.C. § 1182(a)(3)(B), permitted a finding of inadmissibility for an alien engaged in or connected to terrorism and laid out detailed definitions for terms such as "terrorist activity," "engage in terrorist activity," and "terrorist organization." Here, the cited statute only requires a finding that the applicant will enter the U.S. to engage in "any other unlawful activity." This allows a finding of inadmissibility for any unlawful conduct, even traffic infractions. Such broad discretion is closer to the authority granted to the Attorney General in *Mandel* than the detailed statute in *Din*. Because the Attorney General had broad discretion to grant or deny Mandel a waiver of inadmissibility, a separate factual explanation for the denial was required. *See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment).

The *Muñoz* court similarly reasoned that "[u]nlike surrounding provisions, 8 U.S.C. § 1182(a)(3)(A)(ii) does not specify the type of lawbreaking that will trigger a visa denial, and a consular officer's belief that an applicant seeks to enter the United States for general (including incidental) lawbreaking is not a 'discrete' factual predicate." *Id. But see Colindres*, 2023 WL 4140277, at *6 (holding that § 1182(a)(3)(A)(ii) "specifies a factual

17

predicate for denying a visa: The alien must 'seek[ ] to enter the United States to engage . . . [in] unlawful activity'" (alterations in original and citations omitted)).

Finding that § 1182(a)(3)(A)(ii) lacks discrete factual predicates is not the end of the "bona fide" journey. "In the event the statute speaks in sufficiently broad terms that it does not itself specify discrete factual predicates for denying a visa, the government can still satisfy due process by disclosing the facts motivating its decision to deny the visa under the statute." *Colindres*, at *8 (Srinivasan, C.J., concurring in the judgment) (cleaned up). "[T]here must be a fact in the record that 'provides at least a facial connection to' the statutory ground of inadmissibility." *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016) (quoting *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment)).

Here, in addition to the statutory citation, the Immigrant Visa Unit's denial letter to Mr. Sandoval stated his denial was "due to the consular officer's factual finding that there is reason to believe that you are a member of a known criminal organization consistent with the Department of State's Foreign Affairs Manual (FAM), at 9 FAM 302.5-4(B)(2)." (Doc. 15-3).

This is a close question. Lacking controlling authority, the Court finds that the Government's explanation in this case was insufficient to satisfy *Mandel*'s requirement that visa denials which burden constitutional interests be accompanied by a bona fide factual basis.

In *Mandel*, the Supreme Court accepted the Attorney General's explanation that Mandel was denied an inadmissibility waiver because on a prior trip he had gone outside the stated purpose of the trip. 408 U.S. at 759. In *Muñoz*, the court found sufficient the Government's explanation that the visa denial was based on the applicant's "in-person

18

interview, a review of his tattoos, and the information provided by law enforcement saying that he was a member of MS-13." 50 F.4th 906 at 918.[3] In *Cardenas*, the Ninth Circuit found sufficient the consular officer's explanation that the immigrant's visa was denied because law enforcement had previously arrested him and identified him as a member of the Sureños street gang. 826 F.3d at 1168, 1172. The Seventh Circuit has found sufficient a consular officer's visa denial based on the applicant being a suspected drug trafficker when the immigrant had previously "been indicted for possessing a substantial quantity of cocaine with intent to distribute," *Morfin v. Tillerson*, 851 F.3d 710, 713 (7th Cir. 2017), as well as a consular officer's denial based on the immigrant attempting to smuggle two children into the U.S., *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019).

Here, the Court is not convinced that the bare allegation that Mr. Sandoval is "a member of a known criminal organization" was sufficient to "provide[] a facial connection to the statutory ground of inadmissibility, thereby giving a [Ms. Arias] notice of the reason for the denial." *Muñoz*, 50 F.4th at 919. The information provided here was less than the Government provided in *Mandel*, *Cardenas*, *Muñoz, Morfin*, and *Yafai*. Unlike the explanations given in those cases, the Immigrant Visa Unit's letter does not state the specific organization Mr. Sandoval is an alleged member of, the nature of his suspected criminal activity, nor any of the facts that led the officer to her conclusion.

Moreover, there is insufficient connection between the finding that an applicant is a suspected member of a known criminal organization and the statutory basis for

_____

[3] The *Muñoz* court ultimately held that, although the Government's explanation was sufficient, it was untimely because it was not provided until three years after the visa denial, in the midst of litigation. 50 F.4th 906 at 923.

inadmissibility. Simply stating that Mr. Sandoval is a suspected member of a criminal organization does not necessarily suggest, without more, that he "seeks to enter the United States to engage solely, principally, or incidentally" in "any other unlawful activity." § 1182(a)(3)(A)(ii). Being a suspected member of a criminal organization is not a crime that one can seek to commit in the U.S. The Foreign Affairs Manual lists many known criminal organizations that engage in varied types of crime, some in the U.S. and some not. Stating only that a visa applicant is a member of "a known criminal organization" says little about a visa applicant's *purpose* in entering this country. For example, it could be that the applicant's purpose in entering the U.S. is to flee forced gang membership. Without more information, the applicant is left to guess what type of crime his is suspected of seeking to commit in the U.S. (In this case, a country where the applicant had already lived for a decade without committing any such crimes.)

The Foreign Affairs Manual seems to acknowledge that membership in a criminal organization does not necessarily indicate a purpose to commit criminal activity in the U.S. The Manual explains that "*[a]ctive* membership in [a known criminal organization] indicates continuous involvement in criminal activities and, therefore, *could* reasonably support a conclusion that any travel by such an applicant to the United States likely will involve criminal activity." 9 FAM 302.5-4(B)(2)(d). In other words, if an applicant is an *active* member, they *might* be seeking to engage in criminal activity in the U.S. And even if the consular officer suspects the applicant of being a member of a criminal organization, the Manual instructs the officer to not make a finding of inadmissibility if there is no reason to believe the applicant will engage in unlawful activity in the U.S. *See* 9 FAM 302.5-4(B)(2)(d). Nevertheless, the notice to Mr. Sandoval did not even specify that he is a

20

suspected *active* member of a criminal organization, let alone provide any of the facts that led the officer to believe Mr. Sandoval seeks to re-enter the U.S. to commit criminal activity.

Requiring slightly more of a factual basis under § 1182(a)(3)(A)(ii) than for other bases of inadmissibility under § 1182 makes sense because it is the statute's catch-all provision, for "any other unlawful activity." Had the consular officer suspected Mr. Sandoval of being a controlled substance trafficker or terrorist, for example, presumably she would have cited one of those specific reasons. *See* 8 U.S.C. § 1182(a)(2)(C), (a)(3)(B).

The Court is sensitive to consular officers' broad—and usually unreviewable— authority to adjudicate visa applications. Even so, *Mandel* places a burden on the Government to provide a modicum of explanation for a visa denial when a citizen's constitutional rights are implicated. Here, without more specific information as to why Mr. Sandoval's visa was denied, Ms. Arias lacked "the ability to vindicate her liberty interest, whether through the presentation of additional evidence or initiation of a new petition." *Muñoz*, 50 F.4th at 922. Accordingly, the Court finds that the consular officer failed to provide a facially legitimate and bona bide factual basis for the denial of Mr. Sandoval's visa, and under the *Mandel* exception, Ms. Arias has stated a claim for the denial of her due process rights. Because the Court finds Ms. Arias's due process claim can move forward on this basis, it need not consider at this juncture whether the Government's factual basis was timely provided nor whether Ms. Arias has met her burden to establish that the consular officer acted in bad faith when denying Mr. Sandoval's visa application.

\*      \*      \*

The Government argues that all it is required to do is cite a facially legitimate statutory reason for its denial—that it is *never* required to give a separate factual basis. The Government argues, "as the plurality in *Din* held and the Supreme Court affirmed in [*Trump v. Hawaii*], if a visa refusal is premised on a valid statutory ground of ineligibility— as Mr. Sandoval's was here—then the refusal is facially legitimate and bona fide." (Doc. 19-1, pp. 19–20). This position has been embraced by several courts and jurists. *See Sesay v. United States*, 984 F.3d 312, 316 (4th Cir. 2021) ("The Supreme Court has unambiguously instructed that absent some clear directive from Congress or an affirmative showing of bad faith, the government must simply provide a valid ineligibility provision as the basis for the visa denial."); *Baaghil*, 1 F.4th at 432 ("Even a 'statutory citation' to the pertinent restriction, without more, suffices."); *Muñoz v. United States Dep't of State*, 2023 WL 4537034, at *9 (9th Cir. July 14, 2023) (Bumatay, J., dissenting from denial of rehearing en banc) ("In *Trump v. Hawaii*, the Court further limited the *Mandel* exception and adopted Justice Kennedy's view that statutory citation is enough to satisfy our review.").

The Court rejects this argument. If the consular officer could satisfy the *Mandel* exception to the doctrine of consular nonreviewability simply by citing *any* valid statutory basis for inadmissibility—without regard for whether the statute specifies discrete factual predicates—*Mandel* would be a dead letter. As the Eleventh Circuit has explained, "Necessary to Justice Kennedy's concurrence in *Din* was the distinction between statutes that detail discrete factual predicates, like those at issue here, and statutes that do not, like the one in *Mandel*." *Del Valle v. Sec'y of State*, 16 F.4th 832, 842 (11th Cir. 2021)

(citation omitted). The Seventh and Ninth Circuits have found the same. *See Yafai*, 912 F.3d at 1021 (explaining that, under *Din*, only when a statute specifies discrete factual predicates will a statutory citation alone suffice); *Cardenas*, 826 F.3d at 1172 (same).

In *Trump v. Hawaii*, the Court held that President Trump's travel ban was a valid exercise of executive authority under the INA. *See* 138 S. Ct. 2392, 2423 (2018). The Court reasoned that *Mandel*'s "deferential standard of review" was applicable to the travel ban order, noting that, under *Mandel*, courts ask "only whether the policy is facially legitimate and bona fide." *Id.* at 2419–20. The Government latches on to the following sentence: "In *Din*, Justice KENNEDY reiterated that 'respect for the political branches' broad power over the creation and administration of the immigration system' meant that *the Government need provide only a statutory citation to explain a visa denial.*" *Id.* at 2419 (emphasis added) (quoting *Din*, 576 U.S. at 106 (Kennedy, J., concurring in the judgment)).

In suggesting that *Hawaii* altered Justice Kennedy's *Din* test, the Government takes the Supreme Court's language out of context. *Hawaii* was merely describing Justice Kennedy's opinion in *Din*, where he found that the statute *in that case* provided sufficient factual predicates and was enough on its own to justify the visa denial. The *Hawaii* Court was certainly not abrogating the rest of Justice Kennedy's opinion, which speaks of *Mandel*'s requirement for a factual basis where the statute is insufficient on its own. As the Ninth Circuit has explained:

> The Government overlooks the fact that *Trump v. Hawaii* did not involve review of a discrete individual visa denial, but rather, a broad-based challenge to a presidential proclamation that imposed certain generally applicable restrictions on the entry of aliens from specified countries. It is therefore unsurprising that, in adapting the standards set forth in the *Din*

23

plurality and in earlier cases to the context of a broad policy established in a presidential proclamation, the Court did not recite the portions of the *Din* plurality's test that are specifically tailored to addressing the review of a particular visa denial decision involving an individual alien. Nothing in *Trump v. Hawaii* suggests that, in the context of the review of an individual visa denial, as in *Din*, the standards set forth by the *Din* concurrence would not continue to apply.

*Khachatryan*, 4 F.4th at 851–52.

The Government further argues that "the Ninth Circuit [in *Muñoz*] did not address the authority granted by Congress in section 1182(b)(3), which Justice Kennedy noted 'gives additional support to the independent conclusion that the notice given [which only cited to the statutory ground of ineligibility] was constitutionally adequate.'" (Doc. 19-1, p. 20 (quoting *Din*, 576 U.S. at 106) (alteration in original)). Section 1182(b)(1) requires a consular officer who denies a visa to "provide the alien with a timely written notice that-- (A) states the determination, and (B) lists the specific provision or provisions of law under which the alien is inadmissible or adjustment." However, section 1182(b)(3) exempts from this requirement denials made under § 1182(a)(2) and (3)—the provision at issue in this case.

The Court is not persuaded that this authority changes the analysis. First, the consular officer in this case *did* cite a "specific provision" of law when denying Mr. Sandoval's visa, despite not being required to do so by statute, and the relevant question is whether *Mandel* and *Din* require additional explanation when constitutional rights are implicated. Second, *Mandel*'s requirement that the factual basis be facially legitimate and bona fide is not a creature of statute but of constitutional due process. Third, Justice Kennedy's single reference in *Din* to § 1182(b)(3) was in the context of explaining why, when citing to § 1182(a)(3)(B) to deny the applicant's visa based on him being a

24

suspected terrorist, the Government was not required to point to the specific subsection describing the type of terrorist activity that the applicant was suspected of. *See Din*, 576 U.S. at 105–06 (Kennedy, J., concurring in the judgment). The statute relied on here, § 1182(a)(3), does not contain any further subsections.

### B.  APA Claim

The Government next argues that Ms. Arias's separate APA claim must be dismissed because plaintiffs cannot "short-circuit" the doctrine of consular nonreviewability's protections simply by attacking the consular officer's decision under a different statute. (Doc. 19-1, p. 28).

Ms. Arias argues that "the APA was properly invoked against DHS for its role in the facts leading to the unlawful visa denial," and the doctrine of consular nonreviewability does not apply to DHS. (Doc. 21, p. 27). The Amended Complaint alleges that DHS was the true driver behind Mr. Sandoval's visa denial, not the Department of State. *See* Doc. 15, ¶ 21.

The Government cites to *Allen v. Milas*, 896 F.3d 1094 (9th Cir. 2018). There, the court held that the doctrine of consular nonreviewability bars APA claims attacking a visa denial. *Id.* at 1107. It reasoned that *Mandel*'s exception to consular nonreviewability is only for *constitutional* claims; statutory attacks on a visa decision are barred from judicial review. *Id.*; *see also Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158 (D.C. Cir. 1999) (same).

Assuming as true Ms. Arias's allegation that DHS had a hand in denying Mr. Sandoval a visa, she cites no authority to exclude DHS from the protections of the doctrine of consular nonreviewability. While the doctrine's name may suggest it applies only to

consular officers, its foundation is in the separation of powers and is intended to shield the executive branch's decision-making process, whatever that might entail.

Based on this and because the *Mandel* exception does not apply to statutory claims, the Court finds that the doctrine of consular nonreviewability bars Ms. Arias's APA claim in Count One of the Amended Complaint, and that claim must be dismissed.

### C.  Proper Defendants

Finally, the Government argues that "to the extent the Court allows the case to continue, several defendants that Plaintiff names in the Amended Complaint should be dismissed because either they have no role in adjudicating the application or they completed their role in the process." (Doc. 19-1, p. 30). "As the consular officer is solely responsible for the issuance of visas, they would be the only proper Defendant in this action." *Id.* The Government acknowledges that "the head of the agency is the ordinary and appropriate defendant and target of any potential injunction or decree issued by the Court" in a case challenging a federal practice, statute, or regulation. *Id.* at 32. This case is different, according to the Government, because Ms. Arias "seeks to compel further action on Mr. Sandoval's visa application, which is the exclusive province of the consulate in the Foreign Jurisdiction." *Id.*

As to Secretary of Homeland Security Mayorkas, the Government argues that Ms. Arias lacks standing to sue the secretary because "the Department of Homeland Security and its component, USCIS, have completed their adjudication of the underlying visa petition." *Id.* at 31. Ms. Arias alleges in the Amended Complaint that "the denial of immigrant visas, though communicated by Department of State officials, is actually a function of the Department of Homeland Security." (Doc. 15, ¶ 21). The 2003

Memorandum of Understanding Between the Secretaries of State and Homeland Security Concerning Implementation of Section 428 of the Homeland Security Act of 2002 states, "The Secretary of Homeland Security will have final responsibility over visa guidance to consular officers concerning eligibility for classification for nonimmigrant and immigrant visas" and "over visa guidance concerning grounds of inadmissibility for visa applicants." (Doc. 15-7, p. 4). The Amended Complaint also points to 6 U.S.C. § 236, which states the Secretary of Homeland Security "shall be vested exclusively with all authorities to issue regulations . . . relating to the functions of consular officers of the United States in connection with the granting or refusal of visas, and shall have the authority to refuse visas in accordance with law." Based on this, the Amended Complaint alleges "the inadmissibility determination against Mr. Sandoval was ultimately rendered by DHS officials." (Doc. 15, ¶ 21).

Based on these allegations and authorities, the Court finds Ms. Arias has plausibly alleged that DHS had a hand in finding Mr. Sandoval inadmissible. If, as is alleged, DHS was the true moving force behind Mr. Sandoval's visa denial, Ms. Arias cannot be accorded full relief without DHS as a party.

As to Attorney General Garland, the Government argues that the Amended Complaint lacks any factual allegations concerning the Attorney General's role in denying Mr. Sandoval's visa and therefore the Attorney General is not a proper defendant. In Ms. Arias's view, Attorney General Garland is a proper defendant because he "is responsible for generating controlling rulings of immigration law, which bind the Secretary of State, the Secretary of Homeland Security, and consular officers. *See* 8 USC § 1103(a)(1).

27

Thus, his interpretations of the inadmissibility provision at issue in this case make him a relevant party." (Doc. 21, p. 28).

The Court agrees with the Government that Attorney General Garland should be dismissed. The Amended Complaint makes no specific allegations as to how the Attorney General's actions led to Mr. Sandoval's visa denial, nor how the relief Ms. Arias seeks requires an injunction against the Attorney General.

Finally, as to Secretary of State Blinken, the Government argues that he has no authority under the INA to adjudicate visa applications; that authority rests solely with the consular officer. Ms. Arias argues the Secretary of State is a proper defendant because "is the head of the executive department that issued the visa denial and has been accepted as the relevant defendant in Supreme Court decisions addressing consular nonreviewability." *Id.*

The Court agrees with the Government that Secretary Blinken should be dismissed. The Amended Complaint makes no specific allegations as to the Secretary's role in denying Mr. Sandoval a visa, and the consular officials who issued the visa denial will remain parties. Ms. Arias does not explain how the relief she ultimately seeks— reversal of the visa denial—requires Secretary Blinken as a named party.

### IV. CONCLUSION

For these reasons, the Motion to Dismiss (Doc. 19) is **GRANTED IN PART AND DENIED IN PART**. Ms. Arias's APA claim in Count One and all claims against Attorney General Garland and Secretary of State Blinken are **DISMISSED**. The Clerk is directed to terminate Attorney General Garland and Secretary of State Blinken as parties.

The remaining Defendants are **ORDERED** to answer the Amended Complaint no later than 14 days from the date of this Order and provide initial disclosures no later than 30 days from the date of this Order.

**IT IS SO ORDERED** on this 10th day of August, 2023.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE