**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**FAYETTEVILLE DIVISION**

**SLOANE BEATRIS ARIAS**                                                                             **PLAINTIFF**

V.                                          **CASE NO. 5:22-CV-5248**

**KRISTI NOEM,** *et al.*[1]                                                                          **DEFENDANTS**

**OPINION AND ORDER**

This matter is before the Court on Defendants' Motion for Reconsideration (Doc. 45); Plaintiff's Response (Doc. 46), which this Court construes to include a Motion for Reconsideration and Motion for Leave to Amend; and Defendants' Response (Doc. 51). For the reasons stated in this Opinion and Order, the Court **GRANTS** Defendants' Motion (Doc. 45); **DENIES** Plaintiff's request for reconsideration, *see* Doc. 46; and **GRANTS IN PART AND DENIES IN PART** Plaintiff leave to amend, *see* Doc. 46.

The Court will start by reviewing the background of the case. It will then address each party's motion for reconsideration and Plaintiff's motion for leave to amend.

**I.      BACKGROUND**[2]

Plaintiff Sloane Beatris Arias is a United States citizen married to Otto Sandoval, who is a citizen of El Salvador. In 2017, Ms. Arias and Mr. Sandoval initiated the process for him to become a legal permanent resident of the United States. Because Mr. Sandoval had entered the U.S. without inspection nearly ten years prior, he was required to process

---

[1] Under Federal Rule of Civil Procedure 25(d), an officer's successor is automatically substituted as a party.

[2] All facts stated in this section are taken from the operative First Amended Complaint (Doc. 16) and are merely alleged at this stage.

1

his request for permanent residence at the U.S. Consulate in San Salvador. Ms. Arias and Mr. Sandoval completed the necessary forms to enable Mr. Sandoval's travel, and he traveled to San Salvador where he attended two interviews in mid-to-late-2021. In his second interview, Mr. Sandoval was interrogated and accused of being affiliated with a gang. Though he denied any such affiliations, the consular officer told Mr. Sandoval that she would grant him asylum in the U.S. if he would provide the names of gang members known to him.

Approximately one month later, Mr. Sandoval was informed that he had been found permanently inadmissible under 8 U.S.C. § 1182(a)(3)(A)(ii) "due to the consular officer's factual finding that there is reason to believe that [he is] a member of a known criminal organization consistent with the Department of State's Foreign Affairs Manual [ ], at 9 FAM 302.5-4(B)(2)." He was also informed that he was ineligible for a waiver of inadmissibility. Section 1182(a)(3)(A)(ii) renders inadmissible a non-citizen who "a consular officer . . . knows, or has reasonable ground to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity." And the cited Foreign Affairs Manual ("FAM") provision requires the consular officer to "find facts supporting a reason to believe the applicant is an active member" of specific criminal organizations. 9 FAM 302.5-4(B)(2)(a).

Through counsel, Ms. Arias requested a factual basis for her husband's visa denial from the Embassy of San Salvador. After some back-and-forth, the Immigrant Visa Unit sent an email to Mr. Sandoval restating that he was refused a visa under § 1182(a)(3)(A)(ii) due to the belief that he is a member of a criminal organization under the relevant FAM section. The email added that the factual finding was reached "following

a thorough investigation by consular staff." It provided no factual predicate for the belief that Mr. Sandoval was an active member of a criminal organization.

In December 2022, Plaintiff brought this suit, seeking review of her husband's visa denial. The operative complaint is Plaintiff's First Amended Complaint (Doc. 15), which brought claims under the Administrative Procedure Act ("APA") and the Fifth Amendment's due process clause. Defendants previously moved to dismiss for failure to state a claim. *See* Doc. 19. On July 16, 2023, the Court granted in part and denied in part Defendants' motion, dismissing Plaintiff's APA claim but keeping Plaintiff's Fifth Amendment claim. *See* Doc. 27. Importantly, in keeping the due process claim, the Court followed the Ninth Circuit's decision in *Muñoz v. United States Department of State*, 50 F.4th 906 (9th Cir. 2022), *rev'd and remanded sub nom. Department of State v. Muñoz*, 602 U.S. 899 (2024).

Fast forward several months, the Supreme Court of the United States granted certiorari to the Department of State in the Ninth Circuit case, and in January 2024, this Court stayed the instant case pending the Supreme Court's likely dispositive decision. *See* Doc. 42. On June 21, 2024, the Supreme Court issued its decision in *Muñoz v. Department of State*, 602 U.S. 899 (2024), reversing the Ninth Circuit's decision. Subsequently, Defendants filed the instant Motion for Reconsideration, asking the Court to dismiss Plaintiff's due process claim in light of the Supreme Court's decision in *Muñoz*. *See* Doc. 45. Plaintiff filed a Response, asking the court to reconsider its prior dismissal of the APA claim and seeking leave to amend to add claims under the First Amendment and the *Accardi* doctrine. *See* Doc. 46. Pursuant to the Court's instruction, Defendants

3

filed a Response to Plaintiff's request for reconsideration and leave to amend. *See* Doc. 51.

## II.	MOTIONS FOR RECONSIDERATION

Federal Rule of Civil Procedure 54(b) provides that interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Put differently, "[t]he district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C.1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (citation omitted). Reconsideration may be appropriate where the earlier decision "would be rendered incorrect because of a controlling or significant change in law since the issues were submitted to the Court." *Trickey v. Kaman Indus. Techs. Corp.*, 2011 WL 2118578, at *2 (E.D. Mo. May 26, 2011); *Grozdanich v. Leisure Hills Health Ctr., Inc.*, 48 F. Supp. 2d 885, 888 (D. Minn. 1999).

### A. Defendants' Motion for Reconsideration

Defendants move the Court to reconsider its prior refusal to dismiss Plaintiff's Fifth Amendment due process claim in light of the Supreme Court's recent decision in *Muñoz*.

In *Muñoz*, a U.S. citizen brought a Fifth Amendment due process claim after her husband's visa application was denied under § 1182(a)(3)(A)(ii)—the same provision as here. Ruling against Muñoz, the Supreme Court held that "a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." 602 U.S. at 910. The Supreme Court also took the opportunity to clarify its prior holding in *Kleindienst v. Mandel*, 408 U.S. 753 (1972), which this Order addresses in Part III(B), *infra*.

The Court finds *Muñoz* dispositive on Plaintiff's due process claim. Here, Plaintiff claimed Defendants violated her Fifth Amendment due process rights when they failed to provide a facially legitimate and bona fide reason as to why her husband's visa was denied. Prior to the Supreme Court's decision in *Muñoz*, this Court had refused to dismiss Plaintiff's Fifth Amendment claim, citing the Ninth Circuit's now-reversed opinion as support and finding that Plaintiff had a Fifth Amendment right in her husband's consular process that was plausibly violated by Defendants. *See* Doc. 27. Under *Muñoz*, however, Plaintiff's Fifth Amendment claim fails as a matter of law, as the Supreme Court has now held that a citizen does not have a Fifth Amendment "fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 910. Accordingly, Defendants' Motion (Doc. 45) is **GRANTED**, and Plaintiff's Fifth Amendment claim is **DISMISSED**.

### B. Plaintiff's Motion for Reconsideration

In her Response, Plaintiff moves the Court to reconsider its prior dismissal of her claim under the Administrative Procedure Act ("APA"). In a prior Memorandum Opinion and Order, the Court dismissed the APA claim, reasoning that it was barred by consular nonreviewability because "the *Mandel* exception"—which provides a narrow exception to consular nonreviewability when a U.S. citizen's constitutional rights are implicated—"does not apply to statutory claims." (Doc. 27, p. 26).

Plaintiff argues that the Supreme Court's recent abrogation of the *Chevron* doctrine in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), overrides consular nonreviewability. This argument is a nonstarter. The *Chevron* doctrine required courts to defer to an agency's interpretation of the relevant statutory law where the statute was ambiguous or silent on the question at issue. *Chevron U.S.A. Inc. v. Nat. Res. Def.*

5

*Council, Inc.*, 467 U.S. 837, 843 (1984). This Court's dismissal of the APA claim here did not turn on deference to any agency interpretation of the law, so *Chevron* was, and *Loper Bright* is, inapplicable. Moreover, *Muñoz*—decided approximately one week before *Loper-Bright*—made clear that consular nonreviewability is alive and well. The APA claim was properly dismissed because it is barred by consular nonreviewability, and Plaintiff's Motion for Reconsideration is **DENIED**.

### III. PLAINTIFF'S MOTION TO AMEND

Under Federal Rule of Civil Procedure 15(a)(2), a Court should freely grant a party leave to amend its pleading when justice so requires. While the Court has discretion to deny leave to amend based on futility of the amendment, doing so "means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6)." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781–82 (8th Cir. 2008).

Plaintiff seeks to file an amended complaint to bring claims under the APA, the First Amendment, and the *Accardi* doctrine.

#### A. Proposed Count I: APA Claim

Plaintiff seeks to revive her previously dismissed APA claim as Count I of her proposed amended complaint. For the same reasons the Court denies Plaintiff's request for reconsideration of her APA claim, the Court **DENIES** Plaintiff's request to amend her complaint to include this claim.

#### B. Proposed Count II: First Amendment Claim

It is well established that, generally, courts should not review a consular officer's visa denial—a doctrine known as consular nonreviewability. Courts, however, recognize

a "narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen.'" *Muñoz*, 602 U.S. at 908 (quoting *Trump v. Hawaii*, 585 U.S. 667, 703 (2018)). Where a constitutional right is burdened, courts then look to "whether the Executive gave a 'facially legitimate and bona fide reason' for denying the visa." *Id.* (citation omitted); *see Mandel*, 408 U.S. at 770. If a facially legitimate and bona fide reason was given, "the inquiry is at an end," *Muñoz*, 602 U.S. at 908, and courts will "neither look behind the exercise of that discretion, nor test it by balancing its justification against the [constitutional interests of the U.S. citizen]." *Mandel*, 408 U.S. at 770.

Plaintiff initially sought to fall within this narrow exception by asserting a Fifth Amendment due process right. However, *Muñoz* has now made clear that a U.S. citizen does not have a substantive due process right in her noncitizen husband being admitted to the U.S. So, to remain within this exception to consular nonreviewability, Plaintiff seeks leave to add a claim asserting that the denial of her husband's visa directly deprived her of her First Amendment right to receive information from her husband face-to-face. *See Mandel*, 408 U.S. at 762 ("It is now well established that the Constitution protects the right to receive information and ideas." (internal quotations and citations omitted)); *id.* at 765 (noting there "may be particular qualities inherent in sustained, face-to-face debate, discussion and questioning"); *see also Murthy v. Missouri*, 603 U.S. 43, 75 (2024) (explaining that a cognizable injury to a person's right to receive information and ideas under the First Amendment exists "only where the listener has a concrete, specific connection to the speaker" (citing *Mandel*, 408 U.S. at 762)).

Defendants argue that such amendment would be futile, citing *Mandel* and *Muñoz*. According to Defendants, "*Mandel* foreclosed a balancing of First Amendment interests

7

against the Executive's interests in excluding a foreign national such as Mr. Sandoval, and *Muñoz* foreclosed any requirement that the Executive provide Plaintiff with a facially legitimate and bona fide reason for the denial of a visa to their foreign national spouse." (Doc. 51, pp. 6–7). To start, Defendants' reading of these cases glosses over some apparent daylight between the holdings in *Mandel* and *Muñoz*. Moreover, Defendants misconstrue Plaintiff's argument—she does not ask the Court to order Defendants to provide a facially legitimate and bona fide reason but rather makes a direct First Amendment claim.

Again, generally a consular officer's exclusion decisions are not reviewable, except where a U.S. citizen's constitutional rights are implicated. However, even where such rights are implicated, review is precluded where the official provided a facially legitimate and bona fide reason. Importantly, *Mandel*, *Muñoz*, and the instant case all fall within different steps of this framework. *Muñoz* addressed the threshold question: whether a U.S. citizen's constitutional rights were implicated. There, the asserted constitutional right was not implicated because U.S. citizens do not have a right, under the Fifth Amendment, to have their noncitizen spouse admitted to the U.S. *Mandel* addressed the next question: under what circumstances judicial review is available when a constitutional right is implicated and a facially legitimate and bona fide reason *is* provided.

In *Mandel*, multiple professors who were United States citizens invited Ernest E. Mandel, a Belgian professor and self-described "revolutionary Marxist," to speak in the United States. 408 U.S. at 756–57. In short, Mandel's visa application was denied and his request for waiver was rejected. *Id.* at 758–59. The professors brought a claim under the First Amendment, alleging that the statute under which Mandel was excluded was

8

unconstitutional on its face and as applied because it deprived them from receiving information from Mandel. *Id.* at 760, 763. While recognizing that the First Amendment was implicated, the Supreme Court refused to review the decision to exclude Mandel because the Executive had provided a "facially legitimate and bona fide reason" for the exclusion.

Contrary to Defendants argument, however, *Mandel* did not foreclose a First Amendment balancing test altogether. Rather, *Mandel* held: "[W]hen the Executive exercises [its exclusionary] power *negatively on the basis of a facially legitimate and bona fide reason*, the courts will neither look behind the exercise of that discretion, nor test it by balancing its justification against the First Amendment interests of those who seek personal communication with the applicant."[3] *Mandel*, 408 U.S. at 770 (emphasis added). Beyond misquoting the holding in *Mandel*, Defendants' assertion that *Mandel* "foreclosed a substantive First Amendment claim" mischaracterizes the breadth of the Court's holding. The Court in *Mandel* explicitly stated: "What First Amendment or other grounds may be available for attacking exercise of discretion for which no justification whatsoever is advanced is a question we neither address [n]or decide in this case." *Id.* at 770. Thus, while *Mandel* foreclosed balancing First Amendment interests against the Executive's exclusion interests in cases where a facially legitimate and bona fide reason was provided, it expressly left open whether First Amendment grounds may exist for attacking the exercise of this discretion absent such a justification.[4]

---

[3] In its briefing, Defendants materially misquote this sentence by excluding the italicized qualifying language without any indication that part of the quote was omitted. *See* Doc. 51, p. 6.

[4] The Court is mindful of the Supreme Court's deference to Congress and the Executive in making inadmissibility decisions, including its caution against creating a balancing test. *See, e.g., Mandel*, 408 U.S. at 768. The Court notes that, despite these concerns, the

9

In *Mandel*, the exclusion decision was nonreviewable because there was a facially legitimate and bona fide reason provided; and in *Muñoz*, the exclusion decision was nonreviewable because no constitutional right was burdened. On the face of the proposed amended complaint here, neither of these bars to judicial review apply: A constitutional right is allegedly burdened and there is an absence of a facially legitimate and bona fide reason.[5]

In addition to holding there was no substantive due process right, *Muñoz* held that U.S. citizens have no constitutional right to participate in another person's visa application process. 602 U.S. at 919. That is, even where a citizen has a substantive "independent constitutional right" that is affected by another's consular process, that does not "give[ ] that citizen a *procedural* due process right to a 'facially legitimate and bona fide reason' for why someone else's visa was denied." *Id.* at 919 (emphasis added). Importantly, the Supreme Court distinguished between the claims made in *Muñoz* and *Mandel*, explaining that the "'facially legitimate and bona fide reason' in *Mandel* was the justification for

---

Supreme Court still declined to foreclose a First Amendment challenge where no facially legitimate and bona fide reason was given.

[5] The Court previously ruled that the reason given in this case was not facially legitimate and bona fide. *See* Doc. 27, pp. 15–25. In their initial briefing on the motion to reconsider, Defendants merely argue that because there is no Fifth Amendment constitutional interest, the Court need not reach the facially legitimate and bona fide reason question. *See* Doc. 45-1. Then, in their response, Defendants include a footnote reasserting their previous arguments. *See* Doc. 51, p. 7 n.2. The Court previously noted that this was a "close question" with no controlling authority. (Doc. 27, p. 18). It then engaged with five separate circuit cases that had found a facially legitimate and bona fide reason and ultimately concluded, "Unlike the explanations given in those cases, the Immigrant Visa Unit's letter [here] does not state the specific organization Mr. Sandoval is an alleged member of, the nature of his suspected criminal activity, nor any of the facts that led the officer to her conclusion." *Id.* at 19.  The Court declines to reconsider that ruling here.

10

avoiding a difficult question of statutory interpretation; it had nothing to do with procedural due process." *Id.* at 918. The Court in *Muñoz* stated:

> Indeed, a procedural due process claim was not even before the Court [in *Mandel*]. The professors argued that the denial of Mandel's visa *directly deprived* them of their First Amendment rights, *not* that their First Amendment rights *entitled them to procedural protections* in Mandel's visa application process. To make an argument logically analogous to that of the professors [in *Mandel*], Muñoz would have to claim that the denial of [her husband's] visa violated her substantive due process right to bring her noncitizen spouse to the United States—thereby triggering the State Department's obligation to demonstrate why denying him the visa is the least restrictive means of serving the Government's interest in national security. But, as we have explained, Muñoz has disavowed that argument, which cannot succeed in any event because the asserted right is not a longstanding and "deeply rooted" tradition in this country.

*Muñoz*, 602 U.S. at 918–19 (citations omitted) (emphasis added).[6]

Unlike in *Muñoz*, Plaintiff here does not assert a procedural right to receive a facially legitimate and bona fide reason for the denial of her husband's visa.[7] Rather, Plaintiff asserts that the "denial of [her husband's] visa directly deprive[s] [her] of [her] First Amendment rights, not that [her] First Amendment rights entitle[ her] to procedural protections in [her husband's] visa application process." *Id.* at 918. The Supreme Court concluded its opinion in *Muñoz* by stating, "Whatever else it may stand for, *Mandel does not hold* that a citizen's independent constitutional right (say, a free speech claim) gives that citizen a procedural due process right to a 'facially legitimate and bona fide reason'

---

[6] Admittedly, earlier in the decision, the Supreme Court described Muñoz's disavowal of such an argument as "wise," noting "it would be remarkable to put the Government to the most demanding test in constitutional law [strict scrutiny] in the field of immigration, an area unsuited to rigorous judicial oversight." *Muñoz*, 602 U.S. at 911.

[7] As a practical matter, however, the provision of a facially legitimate and bona fide reason would place Defendants squarely in *Mandel* territory and allow them to avoid judicial review where consular nonreviewability would clearly apply.

for why someone else's visa was denied." *Id.* at 919 (emphasis added). Plaintiff now seeks to flesh out "[w]hatever else [*Mandel*] may stand for" post-*Muñoz*.

While judicial review of an exclusion decision is an undesirable result, Defendants have not briefed whether, in the absence of a facially legitimate and bona fide reason, a First Amendment claim is viable.[8] Rather, they rely entirely on their argument that *Mandel* foreclosed First Amendment review—overlooking the distinction that a facially legitimate and bona fide reason was provided in *Mandel* and intentionally avoiding the Supreme Court's explicit statement that *Mandel* did not address what First Amendment grounds might exist where a facially legitimate and bona fide reason was not provided.

The Court is unpersuaded that *Mandel* and *Muñoz* foreclose judicial review of Plaintiff's First Amendment claim where no facially legitimate or bona fide reason was provided. And *on the current briefing*, the Court will defer any decision as to whether Defendants' exclusion of Plaintiff's husband in fact implicates her First Amendment right to receive information. In the spirit of freely granting leave to amend, the Court **GRANTS** Plaintiff's Motion for Leave to Amend to add a First Amendment claim. *See* Doc. 46, pp. 5–

---

[8] In fact, the government concedes that a "First Amendment right to receive information exists"; it just "has never been held to override the sovereign's power to exclude admissible aliens." (Doc. 51, pp. 5–6). While Defendants do argue that Plaintiff's First Amendment claim fails to state a plausible claim for relief because Plaintiff can receive information from her husband in other ways, (Doc. 51, p. 8), the Supreme Court in *Mandel* rejected a similar argument because it "overlook[ed] what may be particular qualities inherent in sustained, face-to-face debate, discussion and questioning." 408 U.S. at 765. The Supreme Court further stated, "While alternative means of access to Mandel's ideas might be a relevant factor were [the Court] called upon to balance First Amendment rights against governmental regulatory interests"—which it found unnecessary because a facially legitimate and bona fide reason had been given—it was "loath to hold on this record that existence of other alternatives extinguishes altogether any constitutional interest on the part of the [professors] in this particular form of access." *Id.*

6. Defendants may wish to file a motion to dismiss the amended complaint to argue that the First Amendment does not, as a matter of law, protect Ms. Arias's right to receive information from Mr. Sandoval in person in the United States, bearing in mind the Court's holding here that *Muñoz* and *Mandel* do not squarely address or foreclose this issue.

### C. Proposed Count III: *Accardi* Claim

Plaintiff proposes adding a claim under the *Accardi* doctrine, alleging that Defendants' failure to follow their own rules and regulations deprived Plaintiff of her ability to seek reconsideration of the inadmissibility decision. The Eighth Circuit has "recognize[d] that the *Accardi* doctrine bars administrative agencies from taking action inconsistent with their internal regulations when it would affect individual rights." *United States v. Lee*, 274 F.3d 485, 492 (8th Cir. 2001) (internal quotation marks and citations omitted). "The crucial question is whether the alleged conduct of [the agency] deprived [plaintiff] of any [ ] right[ ] guaranteed [her] by the statute or by the regulations issued pursuant thereto." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265 (1954).

The alleged rule or regulation here is 22 C.F.R. § 42.81(e), which states, "If a visa is refused, and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered." Plaintiff alleges that Defendants failed to implement subsection (e) by failing to timely identify a specific factual predicate to support the inadmissibility determination and, thereby, deprived Plaintiff of a meaningful opportunity to proffer new evidence to overcome the visa denial. (Doc. 46-1, p. 14). In response, Defendants argue that Plaintiff's proposed amended complaint does not articulate any

13

violation of this provision because it does not allege that she or her husband submitted information to overcome the refusal within one year of the visa denial. (Doc. 51, p. 9).

The Court is sympathetic that without a factual predicate a person's ability to contest the conclusory finding of inadmissibility is greatly frustrated. However, the Court cannot identify any action that the agency took that was inconsistent with its own regulations that deprived Plaintiff of a right guaranteed her by the statute or the regulations. In fact, the statute and regulations guarantee her no right. A person found to be inadmissible under § 1182(a)(3), like Plaintiff's husband, is not entitled even to timely written notice of the determination or the specific provision of law under which the person was deemed inadmissible—certainly their spouse is not entitled under the statute either. *See* 8 U.S.C. § 1182(b)(3). Additionally, under 9 FAM 302.5-4(B)(2), which was cited as part of the basis for the inadmissibility decision here, the consular officer must "make clear findings in the case notes, setting forth in detail all the facts supporting a reason to believe that the applicant is a member of a criminal organization" and "identify the organization of which they are a member." But there is no requirement that those factual findings be disclosed to the person deemed to be inadmissible or their spouse. *Id.*

In light of *Muñoz*'s holding that a citizen spouse does not have a right to procedural due process in her noncitizen spouse's consular process, the Court is hard pressed to find that Plaintiff is entitled to certain administrative processes in her husband's visa denial, particularly when there is no allegation that Defendants acted inconsistent with their own rules or regulations. The Court will, therefore, **DENY** Plaintiff's request to add a claim under the *Accardi* doctrine.

## IV.     CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that Defendants' Motion for Reconsideration (Doc. 45) is **GRANTED**, and Plaintiff's Fifth Amendment claim is **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Reconsideration of the Court's prior dismissal of the APA claim, *see* Doc. 46, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File an Amended Complaint, *see* Doc. 46, is **GRANTED IN PART AND DENIED IN PART**. The Court declines Plaintiff's request to resurrect her APA claim or add an *Accardi* claim. The Court will, however, permit Plaintiff to amend her complaint to include a First Amendment claim. Plaintiff must file her amended complaint, subject to the limits stated herein, **within seven (7) days** from the issuance of this Order. To the extent Defendants wish to move to dismiss the amended complaint, they must do so **within thirty (30) days** of its filing.

The Court will enter a new scheduling order separately.

**IT IS SO ORDERED** on this 31st day of March, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE