IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

SLOANE BEATRIS ARIAS                                                    PLAINTIFF

V.                                          CASE NO. 5:22-CV-5248

KRISTI NOEM, *et al*.                                                   DEFENDANTS

<u>MEMORANDUM OPINION AND ORDER</u>

Now before the Court is the Government's Motion to Dismiss (Doc. 57) and Ms. Arias's Response in Opposition (Doc. 62). The Government moves to dismiss Ms. Arias's Second Amended Complaint (Doc. 53) for failure to state a claim and for lack of jurisdiction. For the reasons stated herein, the Government's Motion is **GRANTED**, and the case is **DISMISSED**.

## I.  BACKGROUND[1]

Plaintiff Sloane Beatris Arias, a United States citizen, challenges the Government's finding that her husband, Otto Orlando Sandoval Gonzalez ("Mr. Sandoval"), is permanently inadmissible to the United States.

### A. Inadmissibility Finding

According to the Second Amended Complaint (Doc. 53), in 2021, a U.S. consular officer in San Salvador, El Salvador, denied an immigrant visa to Ms. Arias's husband under 8 U.S.C. § 1182(a)(3)(A)(ii) (sometimes referred to as "3A2"), which renders

---

[1] The Court recounts the background most pertinent to its ruling here. For a more detailed discussion of the facts and allegations in this case, see the Court's prior decisions. *See Arias v. Garland*, 696 F. Supp. 3d 531 (W.D. Ark. 2023), *on reconsideration sub nom. Arias v. Noem*, 2025 WL 974098 (W.D. Ark. Mar. 31, 2025) (found at Docs. 27 & 52). Though this Order rules on the Second Amended Complaint, the factual allegations are substantially similar to prior complaints.

inadmissible a non-citizen who "a consular officer . . . knows, or has reason[able ground] to believe, seeks to enter the United States to engage solely, principally, or incidentally in . . . any other unlawful activity." *See* Doc. 53, ¶ 8; Doc. 53-3. The visa refusal further stated that this decision was based on the officer's "factual finding that there is reason to believe that [Mr. Sandoval is] a member of a known criminal organization consistent with the Department of State's Foreign Affairs Manual (FAM), at 9 FAM 302.5-4(B)(2)." *See* Doc. 53, ¶ 7; Doc. 53-3. The refusal advised that the "factual finding was reached following a thorough investigation by consular staff," and that "[t]he Department of State's Visa Office in Washington reviewed [the] findings and concurred with [the] determination that the applicant is ineligible under Section 212(a)(3)(A)(ii)." *See* Doc. 53-3. Lastly, it explained that there is no waiver for this ineligibility. *See* Doc. 53-3.

Through counsel, Ms. Arias submitted a request to the U.S. Embassy in San Salvador requesting a further factual basis for the denial. *See* Doc. 53, ¶ 10; Doc. 53-4. In June 2022, she received an email reiterating the basis of the prior refusal. *See* Doc. 53, ¶ 11; Doc. 53-6.

The provision of the FAM cited in the visa refusal explains that ineligibility under § 1182(a)(3)(A)(ii) "may arise" if the consular officer "find[s] facts supporting a reason to believe that the applicant is an active member of one of the [listed] criminal organizations." 9 FAM 302.5-4(B)(2)(a). This list includes "any of the organized Salvadoran . . . street gangs in Central and North America, including, but not limited to" an enumerated list of criminal organizations. *See* 9 FAM 302.5-4(B)(2)(a)(5).

The provision instructs the officer that such determinations "must be made on a case-by-case basis, based on the totality of the circumstances." 9 FAM 302.5-4(B)(2)(g).

2

The consular officer is "required to make clear findings in the case notes, setting forth in detail all the facts supporting a reason to believe that the applicant is a member of a criminal organization described in 9 FAM 302.5-4(B)(2) paragraph a, and [the officer] must identify the organization of which they are a member." *Id.* The provision explains:

> In evaluating the totality of the circumstances, you should consider all relevant factors, including, but not limited to:
>
> (1) [ ] Acknowledgement of membership by the individual, the organization, or another party member;
>
> (2) [ ] Actively working to further the organization's aims in a way that suggests close affiliation;
>
> (3) [ ] Receiving financial support or recognition from the organization;
>
> (4) [ ] Determination of membership by a competent court;
>
> (5) [ ] Credible information provided by local or U.S. law enforcement authorities, or other government agencies, indicating that the individual is a member;
>
> (6) [ ] Frequent association with other members;
>
> (7) [ ] Voluntarily displaying symbols of the organization;
>
> (8) [ ] Participating in the organization's activities, even if lawful;
>
> (9) [ ] Information regarding the applicant's criminal record, especially when that information indicates participation in crimes commonly committed by the organization's members, or arrests occurring with other members of the organization; and
>
> (10) [ ] The applicant's demeanor and credibility in answering questions on matters relevant to possible associations with identified criminal organizations, including any efforts by the applicant to evade questioning on such matters, to conceal evidence of their criminal associations or activities, or to misrepresent relevant facts.

9 FAM 302.5-4(B)(2)(i).

This provision is not grounds for inadmissibility if there is no reason for the consular official to believe the applicant will engage in unlawful activity in the United States. 9 FAM 302.5-4(B)(2)(e). Sub-provision (e) acknowledges that there are "rare occasions where a finding that an applicant is a member of an identified criminal organization will not result in a finding of 3A2 ineligibility for that applicant with respect to a specific application for a specific purpose of travel," such as if the applicant were travelling as part of an official government delegation on official business to the United Nations. 9 FAM 302.5-4(B)(2)(e)(1). It also recognizes that "3A2 should not be applied to an applicant previously found to be a member of an identified organized crime group if [the officer] determine[s], based on clear and compelling evidence, that the applicant has ceased to be associated in any way with any criminal organization." 9 FAM 302.5-4(B)(2)(e)(2).

According to the provision, "applying [§ 1182](a)(3)(A)(ii) to active members of criminal organizations makes it a de facto permanent ground of ineligibility, unless the applicant demonstrates, to [the officer's] satisfaction and with clear and compelling evidence, that they are no longer an active member of the organization." 9 FAM 302.5-4(B)(2)(c). The provision outlines how membership in an organized crime organization "became a ground of ineligibility in 1965, when then Attorney General Katzenbach concurred with a recommendation by Secretary of State Rusk that an applicant's membership in the Mafia was a sufficient basis on which to find the applicant ineligible under then [§ 1182](a)(27)." *Id.* Since then, the Department of State has "obtained concurrence from the INS" to treat membership in various other criminal organizations as grounds for ineligibility under § 1182(a)(3)(A)(ii), for example membership in the Chinese Triads, MS-13, and the Yakuza. *Id.*

4

The reason membership in such groups serves as grounds for ineligibility under § 1182(a)(3)(A)(ii) was because "these groups operate as permanent organized criminal societies," and "[a]ctive membership in these groups indicates continuous involvement in criminal activities and, therefore, could reasonably support a conclusion that any travel by such an applicant to the United States likely will involve criminal activity, whether as a principal or incidental purpose for such travel." 9 FAM 302.5-4(B)(2)(d). Further, this is why "there is a reasonable basis for treating this as a blanket ineligibility applicable to every application for entry to the United States." *Id.*

Ms. Arias seeks injunctive relief to rescind or remove the inadmissibility finding because such finding violates her First Amendment right to receive information and ideas from her husband. (Doc. 53, ¶ 13).

## B.  Consular Nonreviewability

The Supreme Court recently summarized courts' ability to review visa decisions made by consular officials:

> "For more than a century, this Court has recognized that the admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'" *Trump v. Hawaii*, 585 U.S. 667, 702 (2018) (quoting *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)). Congress may delegate to executive officials the discretionary authority to admit noncitizens "immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–91(1952). When it does so, the action of an executive officer "to admit or to exclude an alien" "is final and conclusive." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950*); see also Dept. of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138–39 (2020); *Kleindienst v. Mandel*, 408 U.S. 753, 765–66 (1972); *Nishimura Ekiu v. United States*, 142 U.S. 651, 659–60 (1892). The Judicial Branch has no role to play "unless expressly authorized by law." *Knauff*, 338 U.S. at 543. The Immigration and Nationality Act (INA) does not authorize judicial review of a consular officer's denial of a visa; thus, as a rule, the federal courts cannot review those

decisions. This principle is known as the doctrine of consular nonreviewability.

*Dep't of State v. Muñoz*, 602 U.S. 899, 907–08 (2024) (internal citation form altered) (footnotes omitted).

But, the Supreme Court explained, "[w]e have assumed that a narrow exception to this bar exists 'when the denial of a visa allegedly burdens the constitutional rights of a U.S. citizen." *Id.* at 908 (quoting *Trump*, 585 U.S. at 703). "In that event, the Court has considered whether the Executive gave a 'facially legitimate and bona fide reason' for denying the visa." *Id.* (quoting *Din*, 576 U.S. at 103–04 (Kennedy, J., concurring in the judgment)). If a facially legitimate and bona fide reason has been provided "the inquiry is at an end—the Court has disclaimed the authority to 'look behind the exercise of that discretion,' much less to balance the reason given against the asserted constitutional right." *Id.* (quoting *Din*, 576 U.S. at 104). This exception traces back to the Supreme Court's holding in *Kleindienst v. Mandel*, where the Court recognized this exception in the First Amendment context but refused to "look behind" the consular officer's decision because the officer provided a facially legitimate and bona fide reason. 408 U.S. at 770.

Where a consular officer provides a facially legitimate and bona fide reason for denying a visa, a court may nevertheless "look behind" that decision if the plaintiff makes an affirmative showing that the decision was made in bad faith. *See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). The Ninth Circuit has further expanded on what is required to sufficiently plead bad faith, and the Court discusses this *infra* Section III.C. *See Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008); *Khachatryan v. Blinken*, 4 F.4th 841, 853 (9th Cir. 2021).

Ms. Arias asserts that, because "the Department of State has failed to identify a fact in the record that supports its conclusion that Mr. Sandoval is a member of a known criminal organization or that he intends to enter the United States for the purpose of engaging in criminal activity," (Doc. 53, ¶ 12), the Government has failed to provide a facially legitimate and bona fide reason, thus enabling judicial review. Alternatively, she argues judicial review is proper because the consular officer acted in bad faith by attempting to elicit a confession by promising Mr. Sandoval asylum—a benefit that the consular officer has no legal authority to confer. (Doc. 53, ¶ 17).

### C. Procedural History

#### 1. Prior Complaints and Motion to Dismiss

Ms. Arias's earlier complaints in this case alleged violations of the Administrative Procedures Act ("APA") and of her Fifth Amendment right to due process. *See* Docs. 2 & 15. In June 2023, the Government moved to dismiss for failure to state a claim, arguing that Ms. Arias's claims were barred by the doctrine of consular nonreviewability. (Docs. 19 & 19-1). The Government argued, in part, that its admissibility decision did not implicate Ms. Arias's Fifth Amendment rights and, even if it did, the refusal was facially legitimate and bona fide. (Doc. 19-1, pp. 21–23). Ms. Arias opposed dismissal. (Doc. 21).

While the Court dismissed the APA claim (for reasons not relevant here), it allowed Ms. Arias's due process claim to survive, finding the claim was not barred by consular nonreviewability because (a) Ms. Arias's constitutional rights were implicated, and (b) there was no facially legitimate and bona fide reason for the denial. *See* Doc. 27.

The Court concluded that Ms. Arias's substantive due process right to marriage and intimacy was implicated by her husband's visa denial, following the Ninth Circuit's

decision in *Muñoz v. Department of State*, 50 F.4th 906 (9th Cir. 2022), *rev'd and remanded* 602 U.S. 899 (2024); *see* Doc. 27, pp. 11–15. So, the Court then looked to whether the visa refusal provided a facially legitimate and bona fide reason for its finding of inadmissibility.

The Court found that the Government's citation to § 1182(a)(3)(A)(ii) was insufficient on its own because the statutory provision lacked a discrete factual predicate.[2] *See* Doc. 27, p. 17 (comparing to *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment)). So, it turned to whether the Government "disclos[ed] the facts motivating [the] decision to deny the visa under the statute." *See* Doc. 27, p. 18 (first quoting *Colindres*, 2023 WL 4140277, at *8 (Srinivasan, C.J., concurring in the judgment), and then citing *Cardenas v. United States*, 826 F.3d 1164, 1172 (9th Cir. 2016)). While acknowledging the visa denial's statement that the officer believed Mr. Sandoval to be a member of a criminal organization consistent with 9 FAM 302.5-4(B)(2), the Court was not "convinced that the bare allegation that Mr. Sandoval is a 'member of a known criminal organization' was sufficient to 'provide[ ] a facial connection to the statutory ground of inadmissibility, thereby giving [Ms. Arias] notice of the reason for the denial.'" Doc. 27, p. 19 (quoting *Muñoz*, 50 F.4th at 919); *see also Muñoz*, 50 F.4th at 918 (citing *Mandel*, 408 U.S. at 766–70, for the proposition that "the production of a 'facially legitimate and bona fide reason' is a substitute for the standard balancing of interests in the procedural due process framework"). Because the refusal letter did not "state the specific organization Mr. Sandoval is an alleged member of, the nature of his suspected criminal activity, nor any

---

[2] The Court further explains the standard for when a reason is facially legitimate and bona fide *infra* Section III.B.

of the facts that led the officer to her conclusion," the Court believed the consular officer had failed to provide a "facially legitimate and bona fide" reason for the denial. *See* Doc. 27, pp. 18–19 (distinguishing *Mandel*, 408 U.S. at 759; *Muñoz*, 50 F.4th at 918; *Morfin v. Tillerson*, 851 F.3d 710, 713 (7th Cir. 2017); *Yafai v. Pompeo*, 912 F.3d 1018, 1021 (7th Cir. 2019)). The Court admitted that this was a "close question" that "[l]ack[ed] controlling authority." (Doc. 27, p. 18). Because the Court found a constitutional right was implicated and there was no facially legitimate and bona fide reason provided, it found consular nonreviewability did not apply, and it did not take up the issue of bad faith.[3]

### 2. Supreme Court's Decision in Muñoz *and Motions for Reconsideration*

On January 12, 2024, the Supreme Court granted certiorari in *Muñoz*. *Dep't of State v. Muñoz*, 144 S. Ct. 679 (2024) (mem.). This Court stayed the case at bar, believing that the Supreme Court's decision would be dispositive here. *See* Doc. 42. In June 2024, the Supreme Court issued its decision, reversing and remanding the Ninth Circuit. *See Dep't of State v. Muñoz*, 602 U.S. 899 (2024). The Supreme Court held "that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country," *id.* at 909, thus foreclosing Ms. Arias's Fifth Amendment due process claim. The Court went on to explain that its reliance on a facially legitimate and bona fide reason in *Mandel* "had nothing to do with procedural due process." *Id.* at 918. Indeed, the Court clarified, "*Mandel* does not hold that a citizen's independent constitutional right (say, a

---

[3] The Court did address whether the Secretary to the Department of Homeland Security ("DHS") was a proper defendant, finding that Ms. Arias "plausibly alleged that DHS had a hand in finding Mr. Sandoval inadmissible" provided that "DHS was the true moving force behind Mr. Sandoval's visa denial" as alleged. (Doc. 27, p. 27). The Government again makes this argument in their current Motion, but because the Court grants the Motion to Dismiss, it does not take it up.

free speech claim) gives that citizen a procedural due process right to a 'facially legitimate and bona fide reason' for why someone else's visa was denied," so Muñoz was "not constitutionally entitled to one [t]here." *Id.* at 919.

In light of the Supreme Court's ruling, the Government filed a motion seeking reconsideration of this Court's prior refusal to dismiss. *See* Doc. 45. Ms. Arias responded in opposition, and she also sought leave to amend her complaint to add claims under the First Amendment and the *Accardi* doctrine. *See* Doc. 46.[4] Per the Court's order, the Government then filed a response/reply opposing the relief Ms. Arias requested. *See* Doc. 51. On March 31, 2025, the Court issued an order granting the Government's motion for reconsideration and dismissing the Fifth Amendment claim; denying Ms. Arias's motion to reconsider dismissal of the APA claim; and granting Ms. Arias leave to amend her complaint to assert a First Amendment claim but denying her leave to add an APA or *Accardi* claim. *See* Doc. 52, p. 15. The Court noted its disagreement with the Government's interpretation of the effect of *Muñoz*, and it declined to make a determination on the implication of Ms. Arias's First Amendment rights on the briefing before it. The Court also stated in a footnote that it declined at that time to reconsider its prior finding that the reason provided in this case was not facially legitimate or bona fide, an argument which the Government had mentioned only in a footnote in their response/reply brief. *See id.* at p. 10 n.5; Doc. 51, p. 6 n.2.

---

[4] Ms. Arias also sought reconsideration of the Court's prior dismissal of her APA claim, which this Court denied. *See* Doc. 52, pp. 5–6.

### 3.  *Second Amended Complaint and Pending Motion to Dismiss*

Ms. Arias filed a Second Amended Complaint ("SAC") (Doc. 53) on April 2, 2025, and the Government filed its Motion to Dismiss (Doc. 57) on May 2, 2025. The SAC brings a single claim under the First Amendment, arguing that the Government's "finding of inadmissibility against Mr. Sandoval under INA § 1182(a)(3)(A)(ii) violates Plaintiff's First Amendment rights, by depriving her of her right to receive information and ideas from her husband." (Doc. 53, p. 11). The Government's Motion to Dismiss argues: (a) Ms. Arias lacks standing because her husband is separately inadmissible under § 1182(a)(9)(B)(i)(II), so her claims are not redressable; (b) Ms. Arias fails to state a First Amendment claim because she does not have a cognizable First Amendment right here, the visa refusal was facially legitimate and bona fide, her allegations of bad faith are insufficient, and she lacks a cause of action; and (c) Ms. Arias fails to state a claim against the Department of Homeland Security. *See* Doc. 57. On May 30, 2025, Ms. Arias filed her Response in Opposition (Doc. 62), and the Motion became ripe.

The Court will first address the jurisdictional prerequisite of standing. It will then turn to whether Ms. Arias has pled a plausible claim for relief.

## II.  STANDING

The Government asserts that Ms. Arias lacks Article III standing because—even if its inadmissibility decision under § 1182(a)(3)(A)(ii) was rescinded—Mr. Sandoval is separately inadmissible under § 1182(a)(9)(B)(i)(II). So, the Government argues, Ms. Arias's injury is not redressable. For context, 8 U.S.C. § 1182(a)(9)(B)(i)(II) renders inadmissible "[a]ny alien" who "has been unlawfully present in the United States for one year or more, and who again seeks admission within 10 years of the date of such alien's

departure or removal from the United States." Ms. Arias not dispute that, based on the facts in this case, Mr. Sandoval would be deemed inadmissible under this statute until at least July 2031. *See* Doc. 62, pp. 9–10. However, Ms. Arias disagrees that this deprives her of standing and asserts that because § 1182(a)(9)(B)(i)(II) is temporary and subject to waiver—unlike § 1182(a)(3)(A)(ii), which Ms. Arias argues is permanent and cannot be waived—that the inadmissibility decision under § 1182(a)(3)(A)(ii) inflicts a distinct harm that is redressable by this Court.

"Article III of the Constitution limits federal courts to the adjudication of actual, ongoing controversies between litigants." *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988) (citations omitted). The requirements of Article III standing are well-established; a plaintiff must show: (1) an "injury in fact"; (2) that is "fairly traceable to the challenged action of the defendant"; and (3) that is likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (cleaned up). The third requirement of redressability is at issue here.

"[A] plaintiff satisfies the redressability requirement when [s]he shows that a favorable decision will relieve a discrete injury to h[er]self." *Pharm. Rsch. & Mfrs. of Am. v. Williams*, 64 F.4th 932, 940 (8th Cir. 2023) (quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). Like the first two requirements, "redressability is an irreducible component of standing," so "no federal court has jurisdiction to enter a judgment unless it provides a remedy that can redress the plaintiff's injury." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (citation modified).

The Court agrees with Ms. Arias and finds that she has standing under Article III to bring her claim. The injury that Ms. Arias experiences from her husband being

permanently barred, without possibility of waiver,[5] from entering the country is distinct from the injury she would experience if her husband were deemed inadmissible only for six more years. Furthermore, an inadmissibility finding under § 1182(a)(9)(B) may be waived for a spouse of a United States citizen, "if it is established to the satisfaction of the Attorney General that the refusal of admission to such immigrant alien would result in extreme hardship to the citizen." 8 U.S.C. § 1182(a)(B)(9)(v). According to the SAC, U.S. Citizenship and Immigration Services previously granted Mr. Sandoval a provisional waiver on this basis. Doc. 53, p. 3; *see* Doc. 53-2 (Form I-601A).[6] Thus, it is plausible that Mr. Sandoval could again obtain a waiver if § 1182(a)(B)(9)(i)(II) was the basis for the finding of inadmissibility. Instead, it is the officer's inadmissibility finding under § 1182(a)(3)(A)(ii) that causes Ms. Arias's injury of her husband being permanently barred without possibility of waiver.

### III. FAILURE TO STATE A CLAIM FOR RELIEF

The Government advances multiple arguments for dismissal under Rule 12(b)(6), including asking the Court to reconsider its prior ruling that the visa refusal did not provide a facially legitimate and bona fide reason. *See* Doc. 57, pp. 36–42. On this issue, Ms.

---

[5] The refusal notice states, "There is no waiver available for this ineligibility under U.S. law and regulation." *See* 53-3. Additionally, the refusal notice cites 9 FAM 302.5-4(B)(2), which states, "[T]he basis for applying [§ 1182](a)(3)(A)(ii) to active members of criminal organizations makes it a de facto permanent ground of ineligibility, unless the applicant demonstrates, to [the officer's] satisfaction and with clear and compelling evidence, that they are no longer an active member of the organization." 9 FAM 302.5-4(B)(2)(c). It further explains, "while the ineligibility, as a matter of law, is related to the applicant's intent for each specific trip, there is a reasonable basis for treating this as a blanket ineligibility applicable to every application for entry to the United States." 9 FAM 302.5-4(B)(2)(d).

[6] Provisional waivers are automatically revoked upon a finding of inadmissibility for any reason other than prior unlawful presence in the United States. *See* Doc. 53-2, p. 1.

Arias maintains that the Government has not met its burden and that reconsideration is not warranted here. *See* Doc. 62, pp. 18–25.

### A. Rule 12(b)(6) Standard

To survive a motion to dismiss, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this requirement is to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The Court must accept all of a complaint's factual allegations as true, construe them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *See Ashley Cnty. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). However, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

### B. Facially Legitimate and Bona Fide Reason

#### 1. *After* Muñoz

In no uncertain terms, the Supreme Court in *Muñoz* rejected the idea that the provision of a facially legitimate and bona fide reason was at all tied to the U.S. citizen's due process right: "Lest there be any doubt, *Mandel* does *not* hold that citizens have procedural due process rights in the visa proceedings of others. The Ninth Circuit seems to have read *Mandel* that way, but that is a misreading." *Muñoz*, 602 U.S. at 917. Rather, the Court explained, "the 'facially legitimate and bona fide reason' in *Mandel* was the justification for avoiding a difficult question of statutory interpretation." *Id.* at 918. The professors in *Mandel* had "argued that the denial of Mandel's visa directly deprived them

of their First Amendment rights, *not* that their First Amendment rights entitled them to procedural protections in Mandel's visa application process." *Id.* The Supreme Court warned that a logically analogous argument in *Muñoz*, "would ordinarily trigger strict scrutiny—and it would be remarkable to put the Government to the most demanding test in constitutional law in the field of immigration, an area unsuited to rigorous judicial oversight." *Id.* at 911 (citing *Fiallo*, 430 U.S. at 792).

This Court does not read *Muñoz* as abrogating *Mandel*'s requirement for a facially legitimate and bona fide reason. Indeed, several courts have applied or referenced the ongoing applicability of this requirement after the Supreme Court's decision in *Muñoz*. *See Calvary Albuquerque Inc. v. Rubio*, 136 F.4th 1217, 1227–28 (10th Cir. 2025); *Pietersen v. U.S. Dep't of State*, 138 F.4th 552, 556 (D.C. Cir. 2025); *Mirzaie v. U.S. Dep't of State*, 2025 WL 901697, at *13 (C.D. Cal. Mar. 21, 2025); *Rohani v. Rubio*, 2025 WL 1503950, at *9 (W.D. Wash. May 27, 2025). Rather, the Supreme Court made clear that whether there is a facially legitimate and bona fide reason is a threshold question meant to shield the Executive from judicial review; it is not a procedural due process protection through which citizens may vindicate their constitutional rights.

### 2. Factual Basis Requirement

This Court explained the legal framework for the requirement that a visa denial be facially legitimate and bona fide in a prior order:

> To be facially legitimate, the Government's refusal to grant a visa must cite to a valid statutory ground. *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). Here, there is no dispute that 8 U.S.C. § 1182(a)(3)(A)(ii) is a valid statutory ground to refuse a visa. Therefore, the consular officer's reason for denying Mr. Sandoval's visa was facially legitimate; the question is whether the consular officer communicated to Mr. Sandoval and Ms. Arias a bona fide factual basis for the denial.

> To be bona fide, the consular officer's visa denial decision must provide to the applicant a sufficient factual basis, which may be satisfied by citation to a statutory provision which "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). In other words, if the consular officer cites to a statutory section that includes discrete factual predicates, it can be presumed that the consular officer made the specific factual findings required by that section before denying the visa. If the statute does not specify discrete factual predicates, the consular officer must provide additional explanation for her decision. *See id.*

(Doc. 27, p. 16).

Here, the Government argues that the mere statutory citation was sufficient and, alternatively, that the consular officer provided sufficient factual basis by stating its finding that it believed Mr. Sandoval to be a member of a criminal organization consistent with 9 FAM 302.5-4(B)(2). The Court takes up this second argument below.

### 3. Reconsideration of Court's Prior Ruling

At the Government's request and in light of *Muñoz*, the Court now finds it proper to reexamine its prior ruling that the visa refusal in this case was not facially legitimate and bona fide.[7] *See Arias*, 696 F. Supp. 3d 531.

This Court previously found that the "bare allegation that Mr. Sandoval is 'a member of a known criminal organization' was [in]sufficient to 'provide[ ] a facial

---

[7] A "district court has the inherent power to reconsider and modify an interlocutory order any time prior to the entry of judgment." *K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1017 (8th Cir. 2007) (citation omitted). So, "[w]hen a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal." *Lovett v. Gen. Motors Corp.*, 975 F.2d 518, 522 (8th Cir. 1992); *see also Conrod v. Davis,* 120 F.3d 92, 95 (8th Cir. 1997) (noting the law of the case doctrine does not prevent district courts from reconsidering a prior ruling if they believe it was made in error and that reconsideration may avoid later reversal); Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.").

connection to the statutory ground of inadmissibility, thereby giving [Ms. Arias] notice of the reason for the denial." (Doc. 27, p. 19 (quoting *Muñoz*, 50 F.4th at 919)). The Court distinguished the case at bar from other cases where the refusal letter stated the specific organization the inadmissible person was believed to be a member of, the nature of the suspected criminal activity, and/or the facts that led the officer to his or her conclusion. *See* Doc. 27, pp. 18–19. The Court freely admitted that this was a "close question" that "[l]ack[ed] controlling authority." (Doc. 27, p. 18).

Importantly, in its prior ruling, the Court relied on the Ninth Circuit's framing in *Muñoz* of the facially legitimate and bona fide reason as a procedural due process protection to which Ms. Arias was entitled. *See* Doc. 27, p. 19 (quoting *Muñoz*, 50 F.4th at 919); *Muñoz*, 50 F.4th at 918 (citing *Mandel*, 408 U.S. at 766–70 for the proposition that "the production of a 'facially legitimate and bona fide reason' is a substitute for the standard balancing of interests in the procedural due process framework"). However, in *Muñoz*, the Supreme Court explicitly rejected this framing and made clear the facially legitimate and bona fide reason standard was, instead, a manifestation of the deference given to the Executive in making visa determinations.

With that reframing in mind, the Court now reevaluates the "close question" in this case and finds that its previous ruling imposed too high a burden on the Government in this "area unsuited to rigorous judicial oversight." *Muñoz*, 602 U.S. at 911. Here, the visa refusal provided the statutory citation and the factual finding that the consular officer believed Mr. Sandoval to be a member of a criminal organization *consistent with 9 FAM 302.5-4(B)(2)*. The inclusion of this particular FAM provision is comparable to the statutory factual predicate in *Din*.

In *Din*, a U.S. citizen's spouse was denied a visa "with no explanation other than that the denial was based on 8 U.S.C. § 1182(a)(3)(B), the statutory provision prohibiting the issuance of visas to persons who engage in terrorist activities." 576 U.S. at 102. Justice Kennedy's concurrence concluded that the mere citation to § 1182(a)(3)(B) constituted a facially legitimate and bona fide reason.[8] *Id*. In concluding that § 1182(a)(3)(B) sufficed, Justice Kennedy explained that (a)(3)(B) "specifies discrete factual predicates the consular officer must find to exist before denying a visa." *Id*. at 105. Justice Kennedy further explained that although (a)(3)(B) "covers a broad range of conduct," and Din "perhaps more easily could mount a challenge to her husband's visa denial if she knew the specific subsection," the Government was not required to provide it. *Id*. at 105–06. Necessary to this Court's comparison of *Din* to the case at bar is a more detailed description of § 1182(a)(3)(B), the statutory basis in *Din*.

Section 1182(a)(3)(B) renders an alien who is found to have engaged in a broad range of terroristic activities inadmissible. One such activity is "member[ship] [in] a terrorist organization described in subclause (I) or (II) of clause (vi)." § 1182(a)(3)(B)(i)(V). The section then includes definitions, such as:

**(vi) "Terrorist organization" defined**

As used in this section, the term "terrorist organization" means an organization—

**(I)**    designated under section 1189 of this title;

---

[8] Admittedly, Justice Kennedy describes the statutory citation as "satisf[ying] due process," and *Muñoz* has now clarified this is not a due process issue. *Id*. at 102. Justice Kennedy's use of this language, however, is not particularly concerning with regard to the Court's illustrative use of his opinion here. Certainly, the Supreme Court's clarification in *Muñoz* did not *increase* the Government's burden in such cases, such that Justice Kennedy's finding that the statute's factual predicate sufficed would be null.

**(II)** otherwise designated, upon publication in the Federal Register, by the Secretary of State in consultation with or upon the request of the Attorney General or the Secretary of Homeland Security, as a terrorist organization, after finding that the organization engages in the activities described in subclauses (I) through (VI) of clause (iv); or

**(III)** that is a group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv).

Here, the FAM provision incorporated into the visa refusal is substantively similar to the statutory citation in *Din*. Mr. Sandoval's visa refusal was based on "the consular officer's factual finding that there is reason to believe that you are a member of a known criminal organization consistent with . . . 9 FAM 302.5-4(B)(2)." *See* Doc. 53-3. As discussed *supra*, Section I.A, 9 FAM 302.5-4(B)(2): requires a finding of active membership in one of the listed gangs; requires the consular officer to internally identify the specific organization and make clear findings in the case notes detailing all facts to support the finding; includes a non-exhaustive list of relevant factors an officer should consider; explains why a reasonable belief that a person is an active member in one of the listed criminal organizations supports inadmissibility under § 1182(a)(3)(A)(ii); and excludes rare circumstances where a finding of active membership would not support inadmissibility under § 1182(a)(3)(A)(ii) (i.e., where participating in unlawful activity would not be the purpose of travel). The visa refusal's statement that the officer's belief was consistent with 9 FAM 302.5-4(B)(2) indicates that the consular officer made all the necessary findings under that provision; it is not for the Court to second-guess (i.e., "look behind") whether the consular officer's decision was in fact consistent with the cited provision.

In *Din*, Justice Kennedy also noted that Din "admit[ted] in her Complaint that [her spouse] worked for the Taliban government, which, even if itself insufficient to support exclusion, provides at least a facial connection to terrorist activity." 576 U.S. at 105; *see id.* at 114 (Breyer, J., dissenting) (citations to record omitted) (explaining that Din's husband "at one point was a payroll clerk for the Afghan Government when that government was controlled by the Taliban."). Here, Ms. Arias attached to her SAC emails from January 2022, in which her attorney contested the visa denial and argued that, despite Mr. Sandoval's statements regarding his knowledge of people in gangs and presence at parties with individuals he later learned were in gangs, such "prior intermittent interactions with individuals who may have been gang members is not sufficient to support a finding that Mr. Sandoval himself is a current, active gang member." *See* Doc. 53-4, p. 1. While the Court agrees that such evidence "itself [is] insufficient to support exclusion, [it] provides at least a facial connection to [membership in a criminal organization]." *See Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment); *see also* 9 FAM 302.5-4(B)(2)(i)(6), (8) (including "[f]requent association with other members" and "[p]articipating in the organization's activities, even if lawful" as relevant factors in determining active membership in criminal organization).

Under the Supreme Court's reframing in *Muñoz*, the Court now finds that Mr. Sandoval's visa was denied for facially legitimate and bona fide reasons, as the incorporated FAM provision provides requisite factual findings that are substantially similar—if not *more* detailed—than the factual predicate in *Din*. Because the Court previously found there was no facially legitimate and bona fide reason, it declined to address whether the consular officer acted in bad faith—another purported exception to

consular nonreviewability. Based on the Court's ruling here, it now takes up whether the officer acted in bad faith.

### C.  Bad Faith

Ms. Arias alleges that the consular officer's actions during Mr. Sandoval's interviews demonstrate bad faith. (Doc. 53, ¶¶ 16–17). A declaration from Mr. Sandoval (Doc. 53-8) is attached to the SAC. There, he writes that during his second interview with the consular officer, the officer "repeatedly accused [him] of being a part of a gang" and "demand[ed] that [he] give her names of gang members." *Id.* at ¶ 6. Mr. Sandoval further writes that "[t]he officer told [him] that if [he] did not tell her that [he] was a gang member and give her names of gang members, she was going to cancel [his] visa," but "if [he] provided her with names of gang members, she would give [him] asylum." *Id.* at ¶¶ 7–8. Ms. Arias argues that "[t]he officer did not have the legal authority to offer asylum, and therefore was acting in bad faith in attempting to entrap Mr. Sandoval into making an admission" and "that the consular officer failed to even indicate the name of the gang to which Mr. Sandoval purportedly belongs is further evidence that the officer was acting in bad faith." (Doc. 62, p. 28).

At the pleading stage, Ms. Arias has the burden to affirmatively allege facts "with sufficient particularity" to raise a "plausibl[e]" inference that the consular officer acted in "bad faith." *Din*, 576 U.S. at 105 (Kennedy, J., concurring in the judgment). The Court finds the Ninth Circuit's elaboration of bad faith instructive and illustrative here. The Ninth Circuit requires that the plaintiff allege subjective bad faith—"that the consular official did not in good faith believe the information he had." *Bustamante v. Mukasey*, 531 F.3d 1059, 1062 (9th Cir. 2008). However, "that does not mean that the objective unreasonableness

of a stated reason for a visa denial is irrelevant, particularly at the pleading stage." *Khachatryan v. Blinken*, 4 F.4th 841, 853 (9th Cir. 2021). Rather, "the more objectively unreasonable a stated basis for denying a visa is, the more plausible is the inference that the consular officer who accepted it acted in subjective bad faith." *Id.* Thus, "[t]he unreasonableness of a consular officer's actions . . . remains a factor to consider in assessing whether the plaintiff has pleaded facts with sufficient particularity to give rise to a plausible inference of subjective bad faith." *Id.*

In *Khachatryan*, the Ninth Circuit concluded that the plaintiff, a U.S. citizen, pled "sufficient facts with particularity to raise a plausible inference that [his father's] visa was denied in bad faith." 4 F.4th at 844. In so holding, the Court noted the following allegations: (1) on three separate occasions, the consular officer refused to accept the findings of United States Citizenship and Immigration Services (an agency of the Department of Homeland Security) that the father had not previously engaged in marriage fraud to attain a visa, which had been the officer's basis for denial; (2) "the Embassy erroneously continued to assert that Khachatryan's prior visa application had been denied rather than withdrawn"; and (3) "the Embassy's much-belated and out-of-the-blue assertion that [the father] had committed a *different* form of fraud"—obtaining a visa under a false name— "support[ed], rather than defeat[ed], a reasonable inference of bad faith." *Id.* at 853–55 (emphasis in original).

In contrast, in *Bustamante*, the Ninth Circuit held that the plaintiff failed to plausibly plead bad faith. 531 F.3d at 1062–63. There, the plaintiff argued that the visa denial was in bad faith because the cited reason—the belief that the applicant trafficked controlled substances—was incorrect and the officer had told that applicant that if he agreed to

become a drug trafficking informant, "his problems obtaining a visa 'would go away,'" and if he declined, he "would never become a lawful permanent resident." *Id.* at 1061. As to the alleged incorrectness of the stated reason for inadmissibility, the court held that, for purposes of plausibly alleging bad faith, "[i]t is not enough to allege that the consular official's information was incorrect." *Id.* at 1062–63. As to the officer's offer to make a deal, the court explained that the "allegation that [the applicant] was asked to become an informant in exchange for immigration benefits fails to allege bad faith; if anything, it reflects the official's sincere belief that [the applicant] had access to information that would be valuable in the government's effort to combat drug trafficking." *Id.* at 1063. "Moreover," the court continued, "the [plaintiffs] do not allege that [the applicant] was asked to do anything illegal or improper." *Id.* The court concluded, "Under *Mandel*'s limited inquiry, the allegation that the Consulate was mistaken about [the applicant]'s involvement with drug trafficking, and offered to make a deal with [the applicant] on the basis of this mistaken belief, fails to state a claim upon which relief could be granted." *Id.*

Here, the SAC's allegations are not like those in *Khachatryan*, where the consular officer ignored another agency's repeated corrections of false information and then conveniently came up with a new reason for denial when the previous reasons were shown to be unsubstantiated. Rather, Ms. Arias's allegations are more like those in *Bustamante*. There, the Ninth Circuit found insufficient the allegation that the consular officer asked the applicant to become an informant in exchange for preferential treatment with his visa application. Here, the consular officer allegedly promised Mr. Sandoval asylum if he gave the officer names of gang members and repeatedly accused him of being a gang member. Mr. Sandoval's allegations are likewise insufficient. Nor is it

sufficient that Ms. Arias disagrees with the consular officer's decision. See *Bustamante*, 531 F.3d at 1062–63 ("It is not enough to allege that the consular official's information was incorrect."); *Yafai v. Pompeo*, 912 F.3d 1018, 1022 (7th Cir. 2019) ("But the fact that the officer did not believe Ahmed and Yafai's evidence does not mean that the officer was dishonest or had an illicit motive."). These allegations do not tend to show that the officer did not in good faith believe that Mr. Sandoval was a gang member.

The burden is on Ms. Arias to adequately allege, and eventually show, bad faith by the consular officer. The allegations here fail to chin that high bar. Accordingly, the Court finds that Ms. Arias has failed to adequately plead bad faith.

* * *

The Court is sympathetic to the frustration Ms. Arias surely feels regarding the opacity of the immigration process, particularly since it excludes her husband as he attempted to follow the correct steps towards obtaining legal status in the United States. The Court, however, may not make its rulings based on such sympathies. Because the Court finds that a facially legitimate and bona fide reason was provided and that Ms. Arias has not sufficiently alleged bad faith, consular nonreviewability applies. And the Court does not reach whether Ms. Arias pled a plausible First Amendment violation.

### IV. CONCLUSION

For the reasons stated above, **IT IS HEREBY ORDERED** that the Motion to Dismiss is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED** on this 23rd day of July, 2025.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE